THOMAS H. GAITHER *vs.* HENRY STOCKBRIDGE, Receiver.

*Receiver—Landlord and tenant, Rent—Sec.* 18, *of Art.* 53, *of the Code—Statute of VIII Anne, ch.* 14, *sec.* 1.

Under a creditors' bill against an alleged insolvent corporation, a receiver was appointed on the 12th of November, 1886. By the order appointing him, the receiver was ordered "to take charge and possession of the goods, wares and merchandise, books, papers and effects" of the company so alleged to be insolvent. The goods and chattels taken possession of by him were in a warehouse then under lease to the corporation, and remained there until they were sold by the receiver under an order of Court. A quarter's instalment of the rent for the warehouse fell due on the 1st of December, 1886, a few days after the goods were sold and removed. HELD:

1st. That the receiver, by entering upon the demised premises to take possession and to sell and dispose of the goods and effects of the lessee under the order of the Court, did not make himself liable as assignee or tenant of the premises for the quarter's rent falling due on the 1st of December, 1886.

2nd. That the receiver was neither the assignee in fact nor by operation of law of the premises, and therefore could not be held liable as tenant for their use and occupation.

3rd. That the landlord had no such claim for his rent against the proceeds of sale of the goods and chattels sold by the receiver as entitled him to a preference over other creditors of the tenant; and that he could only occupy the position of general creditor.

The right given to the landlord by section 18, of Article 53, of the Code, to pursue property removed, only exists for rent actually due, and as against property that belonged to the tenant at the time of the removal from the premises.

Before any *quasi* lien for rent can exist under the Statute of VIII, *Anne*, ch. 14, sec. 1, the rent must be due, and the goods remain subject to distress by the landlord.

Gaither *vs.* Stockbridge, Receiver.

APPEAL from the Circuit Court of Baltimore City.

Thomas H. Gaither on the 1st of December, 1886, filed his petition in the case of the Bank of Monroe, doing a banking business in the City of Rochester, in the State of New York, against the Duffy Malt Whiskey Company of Baltimore City, a corporation under the laws of Maryland. The petitioner prayed the Court to pass an order directing Henry Stockbridge the receiver, to pay to him $1250.00, a quarterly instalment of rent due and payable on the said 1st of December, 1886, out of the proceeds of sale of property of the defendant, in the hands of the receiver. The Court (PHELPS, J.,) passed an order on the 5th of January, 1887, denying the relief prayed for by the petitioner, and dismissing the petition. From this order the petitioner appealed. The case is further stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Frank Gosnell,* and *William S. Bryan, Jr.,* for the appellant.

*Henry Stockbridge,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

There are two questions presented on this appeal : 1st, Whether the receiver became assignee of the term created by the lease from the appellant to The Duffy Malt Whiskey Company of the warehouse and premises occupied by that Company at the time of the appointment of the receiver, so as to make him liable for the rent that became due and payable on the 1st of Dec., 1886; and, 2d, If the receiver has not become such assignee or tenant, and as such liable for the rent, whether the appellant had any such preferred lien or charge, *for the accruing rent,* upon the goods and chattels of the lessee upon the premises at the time of the

appointment of the receiver, and which went into his hands, and were sold under an order of Court and taken from the premises, before the rent became due, as will entitle the appellant to be paid in full out of the proceeds of the sale of such goods and chattels?

1. The Duffy Malt Whiskey Company was alleged to be utterly insolvent and unable to pay its debts; and, upon a creditors' bill filed, the appellee on this appeal was appointed receiver, on the 12th of Nov., 1886. By the order of the Court, appointing the receiver, the latter was ordered to "take charge and possession of the goods, wares and merchandise, books, papers and effects" of the Company, so alleged to be insolvent. In pursuance of this order, the receiver did take possession of such goods and chattels found on the premises, and retained the same, until the 22d of Nov., 1886, when, under an order of Court, he sold such goods and chattels, at auction, on the demised premises, where they had remained from the time the receiver took possession thereof. After making sale of the goods and chattels, and the same had been removed from the premises by the purchasers, the receiver, on the 29th of Nov., 1886, tendered the key of the warehouse to the attorneys of the appellant, who refused to receive the same; and afterwards, by the direction of the Court, he deposited the key with the clerk of the Court for the appellant.

The ordinary receiver of a Court of chancery is supposed to be an indifferent person as between the parties to the cause, whose function or office it is to receive and preserve the property or fund in litigation *pendente lite*, when it is made apparent to the Court that the rights of the parties concerned require such protection. He is an officer of the Court, and the fund or property entrusted to his care is regarded as being *in custodia legis*, to await the ultimate disposal thereof by the Court, according to the rights and priorities of the parties concerned. The Court itself has

the care of the property, by its receiver, and that officer, being the mere creature of the Court, has no powers other than those conferred upon him by the Court, or derived from its established practice. His appointment does not change the title to the property, or create any lien upon the same, in favor of any of the parties interested; his holding being for the benefit of the party who may be ultimately determined to be entitled. *Booth vs Clark*, 17 *How.*, 322, 331; *Ellicott vs. Ins. Co.*, 7 *Gill*, 320; *Ellicott vs. Warfield*, 4 *Md.*, 85.

Such, then, being the nature of the office and duty of a receiver, and his relation to the Court, it is manifest that the scope of his duties and powers are very much more restricted than those of an assignee in bankruptcy or insolvency. In the case of an assignee in bankruptcy, the law casts upon such assignee the legal title to the unexpired term of a lease, and he thus becomes assignee of the term by operation of law, unless, from prudential considerations, he elects to reject the term, as being without benefit to the creditors. But not so in the case of a receivers, unless it be, as in New York, and some of the other States, where, by statute, a certain class of receivers are invested with the insolvent's estate, and with powers very similar to those vested in an assignee in bankruptcy. *Booth vs Clark*, 17 *How.*, 331, 335. The ordinary chancery receiver, such as we have in this case, is clothed with no estate in the property, but is a mere custodian of it for the Court; and, by special authority, may become an officer of the Court to effect a sale of the property, if that be deemed necessary for the benefit of the parties concerned. If the order of the Court, under which the receiver acts, embraces the leasehold estate, it becomes his duty, of course, to take possession of it. But he does not, by taking such possession, become assignee of the term, in any proper sense of the word. He holds that, as he would hold any

other personal property involved, for and as the hand of the Court, and not as assignee of the term.

In those cases where the goods of the lessee are remaining on the demised premises at or after the time when the rent becomes due, and the landlord seeks to exercise his right to distrain, and the only impediment to the exercise of that right is the possession of the Court, by its receiver, it seems to be a settled rule of practice to order the receiver to pay the arrears of rent out of the proceeds of the property, or to permit the landlord to proceed with his distress, notwithstanding the possession of the receiver. *Martin vs. Black*, 9 *Paige*, 641 ; *Ex parte Plummer*, 1 *Atk.*, 103, 104. But here there is no such question presented ; and we do not understand that it is contended that the receiver has become the assignee of the entire residue of the unexpired term of the leasehold estate, with the right to dispose of it. What seems to be contended for is that the receiver has, by entering upon the demised premises, to take possession and to sell and dispose of the goods and effects of the lessee, under the order of the Court, made himself liable as assignee or tenant of the premises, to the extent of the quarter's rent falling due on the 1st of Dec., 1886. But this, we think, manifestly, cannot be maintained. No such liability should be imposed upon the receiver for simply performing his duty under the direction of the Court. The Court has given no direction that the leasehold interest should be sold ; and, indeed, the lease, by its terms, is non-assignable, except it be by the express written assent of the lessor, and it is restrictive in respect to the use of the demised premises. We are clearly of opinion, that the receiver is neither assignee in fact nor by operation of law, and therefore could not be held liable as tenant for use and occupation of the premises.

This case is quite unlike that of *Horwitz vs. Davis*, 16 *Md.*, 313. There Horwitz was assignee under a deed of

trust which embraced the tenant's interest in the unexpired term of the demised premises, and the assignee accepted the assignment, and entered upon and used the premises in selling the goods thereon; and it was held, that he was liable to the landlord *as tenant* for use and occupation. The case was assimilated to that of an assignee in bankruptcy, who has the right to elect whether he will take or reject a term under a lease, as it may be for or against the interest of the creditors. And if the receiver here had claimed and entered upon the premises, not only as receiver, but as assignee of all the property of the tenant, as appears to have been the case in *Martin vs. Black*, 9 *Paige*, 641, then there would have been some ground for the contention of the appellant, under the decision of *Horwitz vs. Davis*. But, as we have seen, that is not the case here.

2. Whether the appellant had any such lien or claim upon the goods and chattels sold from the demised premises by the receiver, before the rent became due, as entitles him to a preference over other creditors, as against the proceeds of the sale of such goods and chattels, is the second question; and in regard to which we perceive no difficulty whatever.

As we have already stated, the sale of the goods and effects took place on the premises on the 22nd of November, 1886, and such goods and effects were removed from the premises before the 29th of the same month, on which day the key of the warehouse was offered to be surrendered; and the quarter's rent did not become due and payable until the 1st day of December following. As by the common law the right of distress for rent in arrear must be exercised upon the demised premises, such right terminates with the removal of the goods from the premises, unless the landlord is aided by some statute upon the subject. Here it is supposed that the landlord is entitled to an equitable application of that provision of

the *Code, Art.* 53, *sec.* 18, which provides, that whenever any property is removed from the demised premises within sixty days prior or subsequent to the time when the rent has or will become due, the landlord may follow and seize such property under distress for *rent due*, at any time within sixty days *after* the time when the rent *becomes due;* provided, such property has not been sold to a *bona fide* purchaser without notice, or taken in execution. But this right to pursue property removed only exists for *rent actually due*, and as against property that belonged to the tenant *at the time of removal* from the premises. If the property was removed as the property *bona fide* belonging to another party, clearly, the landlord could have no right to pursue it and seize it for rent subsequently becoming due. Statutes upon this subject, made to protect the landlord, have never been so construed as to allow such privilege. *Buckey vs. Snouffer*, 10 *Md.*, 149, 156; *Alex. Brit. Sts.*, 745; *Martin vs. Black*, 9 *Paige*, 643; *Hastings vs. Belknap*, 1 *Denio*, 190; *Hadden vs. Knickerbocker*, 70 *Ills.*, 677. Nor can any equitable construction of the statute of VIII *Anne, ch.* 14, *sec.* 1, aid the appellant in his contention. That statute has reference to seizure under execution, and, upon due notice given, requires that, before the goods are removed from the demised premises, the party suing out the execution shall pay the arrearage of rent due, not exceeding one year's rent that may be due *at the time of the seizure of the goods.* Before any *quasi* lien could exist, the rent must be due, and the goods remain subject to distress by the landlord. No such state of things existed in this case; and therefore the cases of *Thompson vs. The Balto. and Susq. Steam Co.*, 33 *Md.*, 312, and *Longstreth vs. Pennock*, 20 *Wall.*, 575, are not authorities that afford any support to the claim of the appellant.

It follows that the appellant has no such claim against the proceeds of sale of the goods and chattels sold by the

receiver as entitles him to a preference over other cred-
itors of the tenant, and that he can only occupy the posi-
tion of general creditor; or he may pursue his remedy
on the covenant in the lease against the lessee.    The order
appealed from will therefore be affirmed.

*Order affirmed, and*
*cause remanded.*

( Decided 22nd April, 1887.)


BRYAN, J., filed the following dissenting opinion :

I shall consider the questions which are discussed in the
opinion of the majority of the Court.    My meaning will
be made clearer by a statement of the material facts of
the case.    The Bank of Monroe filed a general creditors'
bill against the Duffy Malt Whiskey Company of Balti-
more City, a body politic and corporate.    The bill alleged
that the defendant was utterly insolvent, and prayed that
a receiver might be appointed to take charge of its assets,
and wind up its business and make distribution among its
creditors, under the order and direction of the Court.    It
also prayed for an injunction, and also that the affairs of
the corporation might be closed up under the direction of
the Court. On the twelfth of November, 1886, the Court ap-
pointed Henry Stockbridge, Esq., receiver, "with the power
and authority to take charge and possession of the goods,
wares and merchandise, books, papers and effects of or be-
longing to the defendant, and to collect the outstanding
debts due to the defendant," and the defendant was re-
quired to yield up and deliver to the receiver its goods,
wares, merchandise, books, papers and effects.    The Court
also ordered an injunction, according to the prayer of the
bill, which was to this effect: that the officers, agents, em-
ployees and attorneys of said body corporate, and each of
them, should by the order of the Court be enjoined and
restrained from the further prosecution or conduct of the

business of the Duffy Malt Whiskey Company or interference in any form therein.

The defendant had leased from Thomas H. Gaither a warehouse in the City of Baltimore, for the term of five years, commencing on the first day of December, 1885, and was possessed of the unexpired portion of this term at the time the receiver was appointed. By leave of the Court Gaither became a party complainant in the cause. There were certain proceedings in reference to this lease, which do not concern the present question, and need not therefore be stated; it being my purpose to mention only the matters which bear on this controversy. ·

On the twentieth of November, 1886, the receiver filed a petition, in which he stated that there was in his hands a considerable quantity of goods in the warehouse which had been the place of business of the Duffy Malt Whiskey Company, and that their preservation and protection in said place was attended with great inconvenience and expense, and that he had advertised them for sale on the premises on the twenty-second day of November, and he prayed for an order authorizing the sale according to the advertisement. The Court passed the order and the sale was made. On the first day of December, Gaither filed a petition praying that the quarterly instalment of rent which fell due on that day, should be paid to him out of the proceeds of the sale of the goods. On the same day the receiver filed a petition, in which he stated, that after his appointment, the defendant delivered to him the keys and possession of the warehouse, and that he had disposed of the assets of the defendant contained in said warehouse, and that after the sale, *to wit,* on the twenty-ninth day of November, and again on the thirtieth of the month, he had tendered to the solicitor of the lessor the keys and possession of the warehouse; but that he declined to receive them. He therefore prayed the Court to pass an order authorizing him to deposit the keys in Court, sub-

ject to the order of the lessor, or to the direction of the Court. The order was passed by the Court. The possession of the receiver spoken of in his petition is shown by the evidence to have been of this kind : he received from the defendant a key of the warehouse and placed a watchman in charge of the goods, who remained on the premises until the sale, and with the assistance of another person, who was also employed by the receiver, arranged them for sale. The sale was made on the twentieth day of November in the warehouse, where the goods had remained ever since the appointment of the receiver. The keys of the warehouse and the control of it were retained by the receiver until the twenty-ninth day of the month ; on that day the keys and possession of the warehouse were, as stated in the receiver's petition, tendered to the solicitor of the landlord, and were by him refused. The Court refused to order the payment of the rent, and dismissed the landlord's petition. This appeal is from the Court's order.

It will be seen that the Court ousted the defendant from the possession and control of all its property, and assumed the administration of it for the benefit of the creditors of the insolvent corporation. The receiver was the chosen officer of the Court to execute its orders. By these orders the goods and chattels of the defendant were sold, and the leasehold property was occupied for the purpose of keeping and preserving the goods and chattels, and was used as a place of sale. This use and occupation of the premises continued from the twelfth of November until the twenty-ninth of the same month. The same entire and absolute dominion was exerted over both species of property ; and the amotion of the defendant's possession and the deprivation of his title was complete in both instances. All the property was in the control and custody of the Court to be dealt with and disposed of, according to the requirements of the law. In the distribution of the

funds arising from this property, most certainly, the Court would be obliged to respect and maintain the rights of the claimants as they existed under the law. It is, therefore,. of great importance to ascertain the legal effect and consequences of the action of the receiver in entering upon,. using and occupying the leasehold property. The Court. having power to take possession of this property, or to abstain from any interference with it, elects to use it in the manner already mentioned. Do any rights arise from such a transaction in favor of the landlord? This Court. has not left in doubt its opinion on this question. In the opinion in *Horwitz vs. Davis,* 16 *Md.,* 313, we find this passage: "A majority of this Court concur in the judgment pronounced in *Dorrance vs. Jones,* and refer to and adopt the reasoning and authorities on which it was based." It is well to look at this case which was so emphatically approved. One Jones, in November, 1853, demised a certain storehouse to King, for the term of a. year; and on the fourth day of February, 1854, King. made an assignment of all his property to Dorrance for the benefit of creditors. Dorrance went into the store to take possession of the stock of goods belonging to King and to dispose of the same; he sold most of the goods on. the premises by auction, on the tenth of February; before the thirteenth of February, he tendered the key of the. store to the landlord's agent, who refused to receive it; he made no further use of the store, which remained unoccupied until the expiration of the term. The question in the case was whether Dorrance was liable for the payment of the rent. The Court said: "The assignment in this case was a general one for the benefit of creditors, and conveyed to the assignee 'all property whatsoever' of the assignor. It was accepted by the assignee;. and although, under these circumstances merely, he may not have been bound as the assignee of the lease, he was certainly so bound, if he elected to accept the interest of

the assignor, and to enter under it.—*Carter vs. Hammett,* 12 *Barb.,* 253 ; *Bourdillon vs. Dalton,* 1 *Esp. Cas.,* 233 ; *Copeland vs. Stephens,* 1 *B. & Ald.,* 593. Conceding that the acceptance of the assignment would not be sufficient, the only question is, whether taking possession of the store, for the purpose of selling the goods assigned, and actually selling them therein, amounted in law to such acceptance. In *Welch vs. Myers,* 4 *Camp.,* 368, it was held by Lord ELLENBOROUGH, that the allowing of the bankrupt's cows to remain on the farm for two days, and ordering them to be milked there, was an adoption of the demise, so as to make the assignees the tenants of the lessor. In *Clark vs. Hume, Ry. & Moody,* 207, ABBOTT, C. J., held, that the assignee elected to accept the lease by using the premises for the benefit of the creditors. These cases establish the position, that taking possession of the leasehold estate, and holding it for the benefit of the creditors, though for ever so short a time, by virtue of the assignment, is the true test. We do not mean to say by this, that if the assignee entered only for the purpose of obtaining possession of the goods, it would be an acceptance ; for that would, in no just sense, be taking possession of the premises. But certainly, if the assignee took possession of the store in order to use it, as the evidence shows it was used, as a place to sell the goods, it falls directly within the principle of the cases we have cited ; and if that was the object, it is entirely immaterial how long the possession was retained, as when once the election was made, the assignee could 'not recede from it.— *Hanson vs. Stephenson,* 1 *B. & Ad.,* 305." 27 *Alabama,* 630. After this exposition of the law, which has been declared by this Court to be correct in point of reasoning and authority, it would be useless to make citations from decided cases. But it may be said that this doctrine is fully sustained by the decisions. Lord LYNDHURST in *Russell vs. Robson,* 2 *Crompton & Jarvis,* 609,

states the principle with great terseness thus: "If assignees go on the premises for the purpose of taking possession, and actually take possession, that is sufficient to bind them to take the premises." It may be asked by what right or authority did the receiver enter upon, and hold these premises, if he did not do so by virtue of the title and possession of which the defendant had been deprived by the order of the Court. If he entered and held possession by virtue of this title, there is no possible escape from the conclusion that he succeeded to the responsibilities of the tenant, and was bound to the discharge of them. When I speak of the receiver's responsibility, I do not mean that he is personally liable for what he did under the orders of the Court; but I mean that he is responsible in his official character, and that this responsibility is to be measured and ascertained by the same rules which would apply to an individual acting in his private character. The Court would not permit a suit to be instituted against him for anything which he had done in obedience to its orders, but would assume exclusive jurisdiction of the subject of complaint, and decree justice in the premises.—*Parker vs. Browning,* 8 *Paige's Chancery,* 388; 2 *Story's Equity Jur., section* 891. Courts appoint receivers, because it is found expedient to have officers of this kind to execute their orders. But they do not by any means authorize them to infringe the rights of other persons, nor do they mean to deny other persons the same redress for acts done by receivers, which they would have in similar circumstances against persons not clothed with an official character. In some cases the Court assumes jurisdiction of controversies between receivers and other persons; and in others, it permits actions at law to be brought for the purpose of determining the matter. It is aside from the present purpose to consider with particularity the circumstances under which the different modes of proceedings are applicable. Receivers for all purposes

of the office are treated as if they held title to the property committed to their charge. In innumerable instances they have been authorized by the Courts which appointed them to institute and defend actions at law which have been brought for the recovery of the property affected by their trust. Of course, they could neither prosecute nor defend an action, unless they were considered *pro hac vice* as having title. It appears from the opinions of the Courts of New York, that it is the usual practice in that State, to have an assignment made to the receiver. It is held, however, that the assignment gives the receiver no new right, and that it is the order of the Courts which works the transfer of the right to him. *Storm vs. Waddell*, 2 *Sanford's Chancery Reports*, 494. In this case, the point decided by the Court is thus summarized by the reporter: "On an order being made for the appointment of a receiver in a judgment creditor's suit, and upon the appointment being complete, the property subject to the order vests in such receiver in equity, as of the date of the order, without the execution of any transfer or assignment." The Court in this case was speaking of what Chancellor WALWORTH, in *Verplanck vs. Mercantile Insurance Company*, 2 *Paige's Reports*, 452, called a "common law receivership" as contradistinguished from a receivership which may be decreed under certain provisions of the statutes relating to corporations, whereby, as the Chancellor states, "the receiver is a statutory assignee, with nearly all the powers and authority of the assignee of an insolvent debtor." 2 *Paige*, 452.

It is extremely difficult to conceive any reason why the acts of a receiver should not be attended with the same legal consequences which would follow from those of any other person under similar circumstances. And it may be safely affirmed that hitherto it has been the accepted doctrine that they are not absolved from responsibility for

their acts. In *Martin vs. Black*, 9 *Paige*, 641, it appeared that a receiver of the defendant's property was appointed and the defendant made an assignment to the receiver according to the practice in New York. At the time of the appointment of the receiver, the defendant was tenant to Graham, one of the appellants. It did not appear that the leasehold was embraced by the receivership and that it was therefore assigned to the receiver. In deciding the case the Chancellor said : "But it does not appear by the papers before me that the term was in fact assigned. And even if the assignment was broad enough to embrace it, I think the receiver would not become the tenant, so as to render him personally liable for the rent or for the performance of other covenants in the lease, without taking possession of the premises, or doing some other act signifying his election to accept the term as a part of the property of the judgment debtor. The situation of the receiver in this case is analogous to that of an executor ; who cannot be charged as the assignee of the lease if he waives the term, the income of which is not sufficient to pay the rent, although the estate of the testator may be liable for the rent in the due course of administration, if the landlord refuses to re-enter. Such, also, is the law in relation to the assignee of a bankrupt. If the assignee elects to waive the term, and neither enters upon the demised premises nor does any other act signifying his acceptance of the term as assignee, he is not liable for the rent ; and the lessor must come in as a general creditor of the bankrupt's estate, or may sue the bankrupt for the rent subsequently accrued. *Bourdillon vs. Dalton*, 1 *Peake's N. P. C.*, 238 ; *Wheeler vs. Beamah*, 3 *Camp. Rep.*, 340 ; *Copeland vs. Stephens*, 1 *Barn. & Ald. Rep.*, 593. But if the assignee enters upon the demised premises, or does any other act which is equivalent to signify his assent to accept the term as the assignee of the lease, he will become the tenant of the premises and render

himself liable for the rent. *Thomas vs. Pemberton,* 7 *Taunt.*, 206; *Clark vs. Hume,* 1 *Ryan & Moody's Rep.*, 207 ; *Hanson vs. Stevenson,* 1 *Barn. & Ald. Rep.*, 303."

And in *Commonwealth vs. Franklin Insurance Company,* 115 *Mass.*, 278, the same doctrine was held. To the same effect is *High on Receivers, sec.* 273. I have never met with any case, opinion or *dictum* to the contrary. There are many general statements to be found in the books to the effect that a receiver is the hand of the Court; that he has no powers except such as are conferred on him by the Court, and that property in his possession is *in custodia legis,* and others to the same effect. They however throw no light on the question to be decided in this case. Receivers are appointed for many various purposes. In the present case, by the positive and explicit order of the Court, and by its subsequent approval, he ousted the defendant of the title and possession of his property. We are required to ascertain the effect and legal consequences of this transaction, and they are determined by the principles which the law has established in regard to such questions and not by expressions descriptive of the nature and character of a receivership.

I have thus far considered this question, as it depends upon the general principles of chancery practice. But it must be noticed that the Court was dealing with an insolvent corporation, and was proceeding to wind up its affairs and to distribute its assets among its creditors. It is not now necessary to inquire whether the Court ought to have appointed a receiver before the insolvency of the defendant had been shown after a hearing. The receiver was appointed and no objection to the appointment has been made. The one hundred and ninetieth section of the Act of 1868, chapter 471, declares the powers of a receiver thus appointed. It is in these words: "That where receivers of the estate or effects of any corporation shall be appointed by a Court, upon or before the dissolution of

any corporation, they shall be vested with all the estate and assets of every kind belonging to such corporation from the time of their qualifying as receivers, and shall be trustees thereof for the benefit of the creditors of such corporation and its stockholders; and they shall proceed to wind up the affairs of such corporation, under the direction of the Court by which they shall have been appointed, and shall have all powers which shall be necessary for that purpose." Now it is impossible to see any distinction between the title of the receiver herein mentioned and that of other trustees; for instance such as those mentioned in *Dorrance vs. Jones,* and in *Martin vs. Black,* and in the vast number of other cases which concur with these decisions. And it is equally impossible to imagine that these receivers are entitled to any special degree of impunity for their actions. My conclusion is, that the receiver must be held to have accepted the lease and to have become tenant to Gaither. The acceptance of the lease was for the benefit of the insolvent estate and the quarter's rent ought to have been paid out of the funds in the receiver's hands. As the landlord entered and took possession of the property after the expiration of the quarter, no question can arise about subsequent rent. There was a clause in the lease which provided that the tenant should not underlet the whole, or any part of the premises without the written consent of the landlord under penalty of forfeiture and damages. But even if this clause could be construed as embracing an assignment of the term, it is clearly competent for the landlord to waive the forfeiture and recognize the assignment.

There is another aspect of the case which I think it proper to notice. By Article 53, section 18, of the Code, whenever property of a tenant has been removed from rented premises within sixty days prior to the time when the rent will fall due, it is subject to distraint by the landlord, unless it has been sold to a *bona fide* purchaser with-

Gaither *vs.* Stockbridge, Receiver.

out notice, or taken in execution. If the tenant had removed these goods from the warehouse without paying the rent, he would have been acting in fraud to the landlord's rights ; and every person who purchased them with notice of his fraudulent conduct, would have held them subject to the landlord's right of distraining them for his rent. Let us suppose that the tenant had advertised that he would sell on the twenty-second of November, all of his goods and chattels on the premises, and that he would not pay the quarter's rent falling due on the first day of December, can there be any rational doubt that every person who purchased goods at the sale would be assisting the tenant to commit a fraud on the landlord? or that the goods so purchased would be liable to distraint for rent? Now the receiver, armed with the powers of the Court, sells these goods, and conveys to the purchaser a title free from the landlord's right of distraint. He is, of course, simply acting in the discharge of a legal duty, and is free from any taint of the moral delinquency, which marks the conduct of the tenant in the case supposed. But if he does not pay the rent, does not he inflict as great a wrong and injury on the landlord ? much greater, because he takes away the redress which might be obtained against the purchaser. A Court of equity will never willingly and consciously do injustice, although in some instances its powers are inadequate to give complete redress to wrongs. When it withdrew beyond the landlord's reach, these goods and converted them into money, its obvious course, sanctioned by many analogies, was to preserve to him the same effectual recourse against the money, which he would have had against the goods. He could not, of course, have the same form of remedy, but he had the right to collect his rent from the goods, and the nearest equivalent relief is to pay him his rent out of the money for which the goods sold. In my judgment the order of the Circuit Court was erroneous.

(Filed 23rd June, 1887.)