[Crim. No. 2393. In Bank.—August 24, 1921.]

## In the Matter of the Application of G. S. GIRARD for a Writ of Habeas Corpus.

[1] CORPORATE SECURITIES ACT—COMMON-LAW TRUST COMPANY—SALES WITHOUT PERMIT—VIOLATION OF ACT.—A sale by trustees, without a permit from the corporation commissioner, of unit shares or unit interests in a common-law trust company organized in pursuance of a declaration of trust executed between the trustees, is a violation of the Corporate Securities Act (Stats. 1917, p. 673; Stats. 1919, p. 231).

[2] ID.—TESTAMENTARY TRUSTEES—SALES WITHOUT PERMITS—LACK OF IMPROPER DISCRIMINATION—CONSTITUTIONAL LAW.—The Corporate Securities Act is not unconstitutional on the ground that it is discriminatory in permitting trustees created by a will or by an order of court in a judicial proceeding to sell securities issued

by such trustees without a permit, while forbidding a sale without such permit in cases of trusts created under instruments executed between individuals.

[3] CONSTITUTIONAL LAW—DISCRIMINATION.—A law cannot be declared unconstitutional in the matter of discrimination unless there is no rational doubt that it improperly discriminates between persons similarly situated.

[4] CORPORATE SECURITIES ACT—REGULATION OF TESTAMENTARY TRUSTS — SILENCE OF ACT — LACK OF DISCRIMINATION. — The Corporate Securities Act is not discriminatory or unjust toward those institutions to which it applies because no provision is made for the regulation of testamentary trusts.

APPLICATION for a Writ of Habeas Corpus. Denied.

The facts are stated in the opinion of the court.

A. J. Bledsoe for Petitioner.

SHAW, J.—The petitioner alleges that he is unlawfully imprisoned by the sheriff of the county of Los Angeles upon a warrant of arrest issued out of the justice court of Los Angeles township upon a complaint which fails to charge a public offense.

The complaint charges that the Crystal & Colored Glass Company was a company of which four persons, namely, Mayer, Marshall, Stevenson, and the petitioner Girard, were trustees, and that neither said company nor any of said trustees thereof had obtained any permit from the commissioner of corporations to issue or sell any of the securities of the company or any shares, interests, or rights into which the capital stock or property of the said company and the rights of stockholders and members thereof were divided, or to sell any instrument issued or offered to the public by said company and trustees evidencing any right to a share in the profits or earnings or distribution of assets of the business of said company; that said Mayer, Marshall, Stevenson, and Girard did then and there willfully, unlawfully, knowingly, and feloniously, and for a valuable consideration, direct and aid in the issue and sale of, and execute and sell, shares, interests, and rights into which the capital stock and property of said company and the rights of members and holders thereof were divided and a certain instrument offered to the public by said com-

pany, evidencing a right to participate and share in the profits, earnings, and distribution of assets of the business of the company, to wit: To John Phillips one thousand unit interests, to William Phillips one thousand unit interests, to Earl Fulton five hundred unit interests, and to John Blaine one thousand unit interests, in consideration of the sum of three hundred dollars paid by William Phillips, three hundred dollars by John Phillips, one hundred dollars by Earl Fulton, and $150 by John Blaine, contrary to the statute, etc.

The complaint attempts to state a cause of action under the provisions of the act known as the "Corporate Securities Act," in common parlance known as the "Blue Sky Law," enacted in 1917, as amended in 1919. (Stats. 1917, p. 673; Stats. 1919, p. 231.) Section 2 of the act declares that "the word 'company' includes all domestic and foreign, private corporations, associations, joint stock companies, and partnerships, of every kind, and also trustees, as hereinafter defined" (subd. 3); also that "the word 'trust' as used in this act includes all voluntary trusts, as the same are defined in the Civil Code, expressly created by or declared in an instrument in writing, other than a will or judicial writ, order, decree, or judgment, to carry on any business or to secure the payment or repayment of money" (subd. 4), and that "the word 'trustee,' except as hereinafter used in subdivision 9 of this section, includes only persons or companies executing trusts as hereinbefore defined" (subd. 5). Subdivision 9 of the section refers only to trustees of a testamentary trust or trust established by judical decree. It has no bearing on the character of trust here in controversy. The act further provides that "no company shall sell," except for delinquent assessment, as provided for sales of stock under the Civil Code, "any security of its own issue until it shall have first applied for and secured from the commissioner a permit authorizing it to do so" (sec. 3). The act creates a state corporation department and provides for the appointment of a commissioner of corporations to perform the duties prescribed in the act. Section 13 provides that every company which shall directly or indirectly issue or cause to be issued any security contrary to the provisions of the act shall be punishable by a fine not exceeding ten thousand dollars. The petition al-

leges that the Crystal & Colored Glass Company is a common-law trust company existing and organized in pursuance of a declaration of trust filed for record with the county recorder of Los Angeles County on March 31, 1921; that it is not incorporated, and that the sole claim of the prosecution in the case is that the sale of the unit interests provided for in said declaration of trust constitutes a violation of said Corporate Securities Act.

Said declaration of trust is to the effect that it constitutes an agreement between the said four trustees above named "for the purpose of enabling the holders of trust shares hereunder to distribute the advantages and risks of their investments from different securities and business enterprises in a way ordinarily possible to investors and to that end hold as a common or joint investment for the common or equal benefit of the shareholders ratably according to their several holdings of unit shares the real or personal property transferred or conveyed to, vested in or acquired by the trustees under this agreement and to invest and reinvest such money and funds as may be paid to the trustees or be realized by them from the disposition of shares issued hereunder in such manner and in such business enterprises, securities and real or personal property as under the terms of this instrument shall be permissible and in the judgment of the trustees . . . shall tend to enhance the value of the shares issued hereunder as investments." The trustees thereby declare that they will hold all property acquired by them as trustees in trust for the benefit of the holders of the certificates of shares issued as evidence of interests, in accordance with the terms of the agreement. The name of the trust is declared to be "The Crystal & Colored Glass Company." The trustees are given power and authority "to issue common shares representing unit interests of no par value." It provides that negotiable certificates for twenty-six thousand units are to be issued to the four trustees named above in equal quantity, each trustee to receive six thousand five hundred unit shares, evidenced by certificates which, as above stated, are to be negotiable. Each unit certificate had the effect of transferring to the holder thereof a proportional interest in the property held by the trustees in pursuance of the trust.

The offense described in the complaint was the sale of these unit interests to the different persons therein mentioned for the prices therein stated without having received from the commissioner of corporations any permit so to do.

[1] It will be seen from the above definitions of the words "company," "trust," and "trustees" that the Crystal & Colored Glass Company comes precisely within those definitions and constitutes a company within the meaning of the act and of the provisions thereof forbidding such company to sell securities of its own issue without a permit. The charge is that the four trustees made the sales set forth in the complaint. A sale of unit shares or unit interests as described in the said declaration of trust without a permit from the corporation commissioner is without doubt a violation of the act.

[2] The defendant argues that the law is unconstitutional for the reason that it is discriminatory, in that it permits trustees created by a will or by an order of court in a judicial proceeding to sell securities issued by such trustees without a permit, while forbidding it in a case of a trust created under an instrument executed between individuals such as that here under consideration. We are satisfied that there is no just ground for declaring this to be an improper discrimination. [3] We cannot declare a law unconstitutional in the matter of discrimination unless there is no rational doubt that it improperly discriminates between persons similarly situated. We must presume that the legislature made inquiry to determine whether or not there were evils which required regulation, and that upon such inquiry it was ascertained that the mischief sought to be corrected was being done under the form of trusts created by private individuals and not under the form of testamentary trusts or trusts declared in judicial proceedings. The trust here involved is a striking example of the practices which the legislature intended to prevent. The corporation commission is required to investigate concerning the assets of such a trust and to refuse to permit it to do business unless upon such investigation he finds that the proposed plan of business is not unfair, unjust, or inequitable, and that the company intends to fairly and honestly transact its business, and that the securities it proposes to issue and the methods to be used in disposing

of the same are not such as in his opinion will work a fraud upon the purchaser. Conceding that the business intended to be done would be legitimate and lawful, it is evident from the experience of mankind that it is of a character which renders it justly subject to regulation, as much so as that of the corporations toward which the law is principally directed. The provisions regarding companies, trusts, and trustees were inserted in the act for the evident purpose of preventing evasions such as would follow if the operation of the act was confined to corporations alone. So far as the question of discrimination is concerned, it may be safely assumed that very few testators will ever conceive the idea of creating a trust such as that here under consideration and such as are described in the Corporate Securities Act, for the purpose of having business of that kind carried on after their death. [4] The fact that no provision is made for the regulation of such testamentary trusts does not render the law discri inatory or unjust toward those institutions to which it applies. The principle involved is the same as that applied in *Ex parte Spencer,* 149 Cal. 401, [117 Am. St. Rep. 137, 9 Ann. Cas. 1105, 86 Pac. 897], where it was claimed that legislation prohibiting the employment of minors in certain trades was discriminatory. The court said: ''The power to forbid their employment in certain occupations and not in all depends on the questions whether or not any appreciable number of children are employed in the callings not forbidden, and whether or not those callings are injurious to them, or less injurious than those forbidden. If certain occupations are especially harmful to young children, and others are not so, there can be no serious doubt that it is within the power of the legislature to forbid their employment in one class and permit it in the other. The difference in the results would justify the classification with a view to the difference in the legislation.'' And the court proceeds to hold that these questions of fact were for the legislature to ascertain and determine and that ''if any rational doubt exists as to the soundness of the legislative judgment upon the existence of the facts, that doubt must be resolved in favor of the legislative action and the law must accordingly be held to be valid in these respects.'' To the same effect, see *San Luis Obispo* v. *Murphy,* 162 Cal. 593, [Ann Cas. 1913D, 71, 123

Pac. 810], where it was said that "the legislature may have reasonably concluded that the cases in which a charge is made by a personal surety on an official bond are so inappreciable and insignificant in number that, in reality, the surety corporation bonds 'compose the entire class' as to . which there is a premium or charge for the risk assumed by the surety, and such a conclusion would warrant the limitation of the provisions of the act to such bond." So in the present case, the legislature may have concluded that the evils which might occur from the administration of a testamentary trust or trust declared by judicial decree or order were so insignificant and inappreciable and the mischiefs arising from the other trusts described in the act which are forbidden to issue securities without a permit comparatively so great, that the latter comprise the entire class to which legislation should be directed.

For these reasons we have concluded that there is no merit in the application for the writ.

It is ordered that the petition for *habeas corpus* be denied.

Sloane, J., Shurtleff, J., Wilbur, J., and Lennon, J., concurred.