## TATLEBAUM ET AL., TRUSTEES *v.* PANTEX MANUFACTURING CORPORATION

[No. 120, October Term, 1953.]

*Decided April 27, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Nathan Patz,* with whom was *Louis J. Sagner,* on the brief, for appellants.

*Morris Rosenberg,* for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Hyman P. Tatelbaum and Sanford A. Harris, trustees for Careful Laundry, Inc., are here contesting an order passed by the Circuit Court of Baltimore City to release to Pantex Manufacturing Corporation, of Pawtucket, Rhode Island, certain equipment it had sold conditionally and delivered to the laundry on North Franklintown Road in Baltimore.

Two conditional contracts of sale were made in the fall of 1952. The first was executed on October 16 and was properly recorded on October 30 in the office of the Clerk of the Superior Court of Baltimore City. The second was executed on November 3 and was recorded by mistake in the office of the Clerk of the Circuit Court for Baltimore County. By this contract Pantex sold twelve laundry presses and other equipment on condi-

tion that the title to the property would not pass until the total price of $11,209.92, which included finance charges, had been paid in 36 monthly instalments.

On July 28, 1953, the laundry executed a deed of trust for the benefit of its creditors. By that deed it conveyed all of its property, real and personal, to the two trustees with power to sell it and to apply the proceeds of sale to the payment of its debts. The Circuit Court of Baltimore City assumed jurisdiction of the trust on the following day.

On August 12, 1953, nine months after the execution of the second contract, Pantex recorded it in the office of the Clerk of the Superior Court of Baltimore City, and on August 14 petitioned the Circuit Court to order the trustees to return the equipment. The contract provided that if the purchaser should default on any obligation under the contract, the full balance would become due, together with attorney's fees of 15 per cent of the unpaid balance; and the purchaser would either pay the balance or deliver the equipment to the seller, who could thereupon take possession of it and sell it at either public or private sale and credit the proceeds on the amount due. The trustees, disputing Pantex's claim to the equipment, stated that creditors claiming more than $5,500 had extended credit to the laundry between the execution of Pantex's second contract and its recordation in the Superior Court; that the laundry owed over $4,000 for wages earned by its employees before the Circuit Court assumed jurisdiction of the trust; and that three notices of tax liens aggregating approximately $19,000 had been recorded by the United States Government in the Superior Court before the second contract was recorded in that Court. The trustees further stated that, while the stock and fixtures and other personal property of the laundry had been appraised at $26,392.50, and the real estate at $75,250, making a total of $101,642.50, the laundry's debts amounted to approximately $128,000; consequently the assets, even including the Pantex equipment, which was then worth between

$7,000 and $8,000, were not sufficient to satisfy the claims of creditors.

On September 22 the Circuit Court, relying on the Conditional Sales Act, Code 1951, art. 21, sec. 74, directed the trustees to return the equipment to Pantex in accordance with the terms of the contract. It was from that order that the trustees appealed here.

Pantex filed a motion to dismiss the appeal. In this State a trustee appointed by or acting under the jurisdiction of a court of equity has the right of an appeal to the Court of Appeals from any final decree determining any preference or priority between creditors or other persons interested in the estate, provided that such appeal is taken with the consent and approval of the court having jurisdiction over the estate. Code 1951, art. 5, sec. 43. As the Court below gave the trustees authority to enter an appeal, we will deny the motion to dismiss.

In practically all jurisdictions statutes have been passed invalidating conditional contracts of sale as to certain classes of persons unless the contract is recorded in the manner required by statute. Divergent results have been reached by the courts in considering the question whether an assignee for the benefit of creditors of a conditional vendee is in a position, under the statute, to assert the invalidity of such a contract as against the conditional vendor who has failed to record his instrument in accordance with the statute. The divergent views have been mainly due to the varying provisions of the recording statutes and to the different conceptions which the courts have held as to the status of an assignee for the benefit of creditors.

In 1910 the Maryland Legislature adopted the Uniform Sales Act, which provides as follows: "Where there is a contract to sell specific goods or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of

possession or property may be thus reserved, notwith-standing the delivery of the goods to the buyer, or to a carrier, or other bailee, for the purpose of transmission to the buyer." Laws 1910, ch. 346, Code 1951, art. 83, sec. 38.

At the time of the passage of the Uniform Sales Act, it was the law in this State that any contract of sale wherein the vendor reserved title to the property until the contract price was paid was valid between the vendor and the vendee and as to all persons claiming under the vendee with notice of the contract, but invalid as to *bona fide* purchasers who acquired the property without notice of the vendor's claim.

We reaffirm the rule announced by this Court in 1914 in *Praeger v. Emerson-Brantingham Implement Co.*, 122 Md. 303, 309, 310, 89 A. 501, that, in the absence of statute, the title of a vendor in a conditional contract of sale can be enforced against either assignees for the benefit of creditors or receivers, since neither assignees nor receivers are *bona fide* purchasers.

The first Act of the Maryland Legislature for the recordation of conditional contracts of sale was passed at its 1916 session. Laws 1916, ch. 355. That Act provided that every note, sale or contract for the sale of goods and chattels, wherein the title thereto, or a lien thereon, is reserved until the same be paid in whole or in part, or the transfer of title is made to depend upon any condition therein expressed, and possession is to be delivered to the vendee, shall, in respect to such reservation and condition, be void "as to third persons without notice" until such note, sale or contract is recorded.

In 1926 the Court in *Charles M. Stieff, Inc. v. Wilson*, 151 Md. 597, 600, 135 A. 407, stated that the Act providing that the reservation of title in a conditional sale contract shall, until the contract is recorded, be void as to third persons without notice, did not intend to make any departure from the familiar American purpose of recording statutes, namely, to protect persons who might

subsequently deal with the property and part with value for it without notice of the earlier conveyance.

In 1928 the Court, taking a step further in *Gunby v. Mack International Motor Truck Corporation,* 156 Md. 19, 25, 142 A. 596, held that, since the Conditional Sales Act does not apply in favor of creditors of the conditional vendee whose claims arose out of transactions prior to the date of the conditional contract, it is immaterial that their claims may have been reduced to judgment after the date of the contract and that execution may have been levied on the property conditionally sold .

In 1931 the Legislature re-enacted the Act to add slightly to the regulations relating to the recording of instruments reserving title. The only addition was the provision that in the case of any corporate or partnership vendee, the instrument should be recorded "where such vendee has its principal place of business in the State of Maryland." Laws 1931, ch. 402.

In 1939 the Act was construed by the United States Circuit Court of Appeals in *Friedman v. Sterling Refrigerator Co.,* 4 Cir., 104 F. 2d 837. That Court, in an opinion by Judge Parker, held that under the Bankruptcy Act a claim which for want of record is void as against some of the creditors of the bankrupt may be avoided *in toto* by the trustee in bankruptcy, even though creditors generally benefit by the avoidance.

The Act came before the Maryland Court of Appeals for construction in 1951 in *Tatelbaum v. National Store Fixture Sales Co.,* 196 Md. 599, 604, 78 A. 2d 228, 230. There the trustees under a deed of trust from a conditional vendee were appealing from an order directing them to pay the balance due on two conditional contracts. The Court held that the contracts were valid against the only creditor who might have relied upon the equipment delivered thereunder, where the creditor had not extended credit to the conditional vendee between the date of the delivery of the equipment and the date when the first contract was recorded, and therefore the contracts were valid against all creditors who were repre-

sented by the trustees. In that case Judge Markell, speaking for the Court, took occasion to say: "In bankruptcy, as in other proceedings, the validity of conditional sale contracts, as against creditors, depends upon state law, but the consequences of invalidity as to particular creditors are different."

In 1949 the Legislature amended the statute by providing that every note, sale or contract for the sale of goods and chattels, wherein the title thereto, or a lien thereon, is reserved until the same be paid in whole or in part, or the transfer of title is made to depend upon any condition therein expressed and possession is to be delivered to the vendee, shall, in respect to such reservation and condition, be void "as to subsequent purchasers, mortgagees, incumbrancers, landlords with liens, pledgees, receivers, and creditors who acquired a lien by judicial proceedings on such goods and chattels without notice" until such note, sale or contract is recorded. Laws 1949, ch. 430.

Thus the 1949 Act omitted "third persons without notice," and substituted the specific classes of creditors who were to be protected against unrecorded conditional contracts. The Act included receivers among the persons to be protected, but did not include trustees.

In 1951 the Legislature re-enacted the Act in the form in which it stands today. Laws 1951, ch. 577, Code 1951, art. 21, sec. 74. This Act likewise does not include trustees among those who are to be protected against unrecorded conditional contracts. It provides as follows:

> "Every note, sale or contract for the sale of goods and chattels, or of any item of furnishing or equipment which is affixed to real property, wherein the title thereto, or a lien thereon, is reserved until the same be paid in whole or in part, or the transfer of title is made to depend upon any condition therein expressed and possession is to be delivered to the vendee, shall in respect to such reservation and condi-

tion, be void as to subsequent purchasers, mortgagees, incumbrancers, landlords with liens, pledges (sic), receivers, and creditors who acquired without notice a lien by judicial proceedings on such goods and chattels, or in the case of any item affixed to real property on such real property, until such note, sale or contract be in writing, signed by the vendee and be recorded * * * in the Clerk's office of the Superior Court of Baltimore City, or in the Clerk's office of the Circuit Courts of the various counties, as the case may be, where the vendee resides, or in the case of a corporate or partnership vendee, then where such vendee has its principal place of business in the State of Maryland, but in any case of any item affixed to real property, such recording shall be where such property is located and may also be where the vendee resides, or where a corporate or partnership vendee has its principal place of business in this State. * * *."

The main contention on this appeal is that the Conditional Sales Act violates the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States. The trustees contend that the Act, by declaring unrecorded conditional contracts void as to receivers, without making them void as to trustees, creates an arbitrary classification. They argue that receivers and trustees are substantially alike, since they are both fiduciaries appointed to serve for the benefit of creditors, and that it is immaterial to creditors whether they are represented by receivers or by trustees, inasmuch as distributions to creditors are governed by the same equitable principles.

The Equal Protection Clause of the Fourteenth Amendment guarantees that equal protection shall be given to all persons under like circumstances in the enjoyment of their civil and personal rights. Hence, a statute placing burdens upon an individual or limiting his rights

may be invalidated because of an arbitrary or unreasonable classification or discrimination. *Barbier v. Connolly,* 113 U. S. 27, 5 S. Ct. 357, 359, 28 L. Ed. 923. But the Equal Protection Clause does not preclude the States from resorting to reasonable classification for the purposes of legislation. It has often been stated that it requires only that the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. The classification, in order to avoid the constitutional prohibition, must be founded upon pertinent and real differences, as distinguished from irrelevant and artificial ones. *Colgate v. Harvey,* 296 U. S. 404, 56 S. Ct. 252, 80 L. Ed. 299, 102 A. L. R. 54; *Old Dearborn Distributing Co. v. Seagram-Distillers Corporation,* 299 U. S. 183, 57 S. Ct. 139, 146, 81 L. Ed. 109, 106 A. L. R. 1476; *United States Mortgage Co. v. Matthews,* 167 Md. 383, 173 A. 903, reversed, 293 U. S. 232, 55 S. Ct. 168, 79 L. Ed. 299.

It is accordingly accepted that the Legislature's power to grant or withhold equitable relief in any class of cases must not be exercised in such a way as to grant equitable relief to some persons and to deny it to others under like circumstances and in the same territorial jurisdiction. *Truax v. Corrigan,* 257 U. S. 312, 42 S. Ct. 124, 130, 66 L. Ed. 254, 27 A. L. R. 375. On the other hand, we consider it beyond any question that a statute which gives preference to one class of creditors over another class in the distribution of the assets of an insolvent debtor, but which has a substantial basis for the classification made therein, does not conflict with the Equal Protection Clause. *Upham v. Bramwell,* 105 Or. 597. 209 P. 100, 210 P. 706, 707; 2 Cooley, Constitutional Limitations, 8th Ed., 815.

There is no question, of course, that a classification made by a Legislature is presumed to be reasonable in the absence of clear and convincing indications to the contrary, and the person who assails it has the burden of

showing that it does not rest upon any reasonable basis, but is essentially arbitrary. *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 31 S. Ct. 337, 340, 55 L. Ed. 369; *Salsburg v. State,* 201 Md. 212, 94 A. 2d 280, affirmed, 346 U. S. 545, 74 S. Ct. 280, 98 L. Ed. 207.

Thus it has been held by the Supreme Court of California that the placing of a burden on some classes of trustees and not on others is not an arbitrary discrimination. In *Ex Parte Girard,* 186 Cal. 718, 200 P. 593, that Court held that a statute which permitted trustees created by a will or by an order of court in a judicial proceeding to sell securities issued by them without a permit from the Corporation Commissioner, but prohibited the sale, without a permit, of securities issued by trustees where the trust was created under an instrument executed between individuals, did not deny the equal protection of the laws.

The law has always recognized a clear distinction between trustees and receivers. The office and functions of a trustee for the benefit of creditors and the office and functions of a receiver are not substantially alike. *Mascot Stove & Mfg. Co. v. Turnage,* 183 N. C. 137, 110 S. E. 779; *Vanderwal v. Vanco Dairy Co.,* 200 N. C. 314, 156 S. E. 512.

Trusts, which originated in the civil law and were developed in the English Courts of Chancery, have been increasingly employed in many fields of human activity. Among the purposes for which they have been created are: the payment of creditors; the sale, mortgage, lease, or management of property to satisfy charges thereon; the collection and receipt of income, profits, and rent; the operation of a trade or business; the protection of beneficiaries against creditors; and the preservation of property pending the exercise of a power of appointment after a life estate. In modern times trusts have been widely used in the field of commerce and trade. Generally, a debtor in failing circumstances has the right at common law to make a general assignment of his property for the benefit of his creditors. *Malcolm v. Hall,*

9 Gill, Md., 177, 52 Am. Dec. 688; *Denny v. Bennett,* 128 U. S. 489, 9 S. Ct. 134, 136, 32 L. Ed. 491. Such an assignment is in its essential nature a contract, and accordingly it must have the general requisites of a contract. It operates not as a mere power, but as a conveyance of title.

The receiver, on the contrary, is not vested with any estate in the property, but is merely a custodian of the property for the court. It is thus obvious that his powers are very much more restricted than those of a trustee. The scope of the receiver's powers in Maryland was outlined by Chief Judge Alvey in *Gaither v. Stockbridge,* 67 Md. 222, 224, 225, 9 A. 632, 10 A. 309, in the following language:

"The ordinary receiver of a court of chancery is supposed to be an indifferent person as between the parties to the cause, whose function or office is to receive and preserve the property or fund in litigation *pendente lite,* when it is made apparent to the court that the rights of the parties concerned require such protection. He is an officer of the court, and the fund or property entrusted to his care is regarded as being *in custodia legis,* to await the ultimate disposal thereof by the court, according to the rights and priorities of the parties concerned. The court itself has the care of the property, by its receiver, and that officer, being the mere creature of the court, has no powers other than those conferred upon him by the court, or derived from its established practice. His appointment does not change the title to the property, or create any lien upon the same, in favor of any of the parties interested; his holding being for the benefit of the party who may be ultimately determined to be entitled."

The trustees have strongly urged that, inasmuch as creditors in a receivership case are protected against

unrecorded conditional contracts, creditors in a trustee-ship case ought to be given similar protection. But the guaranty of equal protection of the laws does not require identity of treatment. It requires only (1) that classification shall rest on real and not feigned differences, (2) that the distinction shall have some relevance to the purpose for which the classification was made, and (3) that the different treatments shall not be so disparte, relative to the difference in classification, as to be wholly arbitrary. *Walters v. City of St. Louis,* 346 U. S. 893, 74 S. Ct. 505, 509, 98 L. Ed. 399.

We may presume that the reason why the Legislature did not give the same protection to creditors in a trustee-ship as it did to creditors in a receivership is that it considered the fact that an assignor for the benefit of creditors acts voluntarily, chooses his trustees, assigns his entire estate to them, defines their powers and duties, and possibly even determines their compensation, and thus he might have it within his power to make an assignment immediately after he purchases property on conditional contracts, and thereby cause loss to unwary vendors. For the reasons we have given we hold that the Act does not infringe the Equal Protection Clause of the Fourteenth Amendment.

In this case there were no subsequent purchasers, mortgagees, incumbrancers, landlords with liens, pledgees, receivers, or creditors who acquired without notice a lien on the equipment by judicial proceedings. Therefore, since the laundry defaulted in the payments of the monthly instalments, Pantex was entitled to repossess its equipment in accordance with the terms of the conditional contracts.

The trustees urge, however, that, even though the Conditional Sales Act may be valid, and even though the reservation of title in Pantex's contracts may be enforceable, the United States Government also has a lien on the equipment for taxes under Sections 3670,

3671, and 3672 of the Internal Revenue Code, and this equipment should be marshaled as an asset for the benefit of all of the unsecured creditors.

We cannot accept that suggestion. It is true that the Government has recorded notices of tax liens in the Superior Court. Section 3670 of the Internal Revenue Code provides that if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. Section 3671 provides that the lien shall arise at the time the assessment list was received by the Collector. Section 3672 provides that such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been duly filed by the Collector. But this is a question between Pantex and the Government. The Court below merely authorized the trustees to deliver the equipment to Pantex. The title to the equipment is subject to any lien the Government may have upon it. There is no reason why the trustees should intercede for either Pantex or the Government.

Nor is there any basis for application of the doctrine of marshaling. The equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt may not by his application of them to his demand defeat another creditor who can resort to only one of the funds. *Sowell v. Federal Reserve Bank of Dallas, Texas,* 268 U. S. 449, 45 S. Ct. 528, 69 L. Ed. 1041. The doctrine is applied in any particular case to prevent a senior lienor or incumbrancer from exercising his right of recourse against the assets or property in controversy in an unreasonable manner or so as to satisfy his claim to the exclusion of the junior claimants. An unsecured creditor has not the standing of a secured creditor to assert the right to have assets marshaled.

For these reasons we will affirm the order directing the trustees to release the equipment to Pantex in accordance with the contracts.

*Order affirmed, the costs to be paid out of the trust estate.*