[Crim. No. 929.  Second Appellate District, Division Two.—March 9, 1923.]

In the Matter of the Application of E. A. LAMB for a Writ of Habeas Corpus.

[1] CORPORATE SECURITIES ACT—TRUSTEES—ASSOCIATION—CONSTRUC-TION OF INSTRUMENT USED.—On this *habeas corpus* proceeding wherein the petitioner sought his discharge from imprisonment under a warrant of arrest issued on a complaint which attempted to charge him with a violation of the Corporate Securities Act (Stats. 1917, p. 673), it is held that the complaint read in the light of the exhibits attached thereto and made a part thereof did not show that petitioner was a "company" in the sense that he was a "trustee," or that the persons with whom he dealt constituted an "association," within the meaning of said act.

[2] TRUSTS—SUBJECT MATTER—TITLE—TRUSTEE.—To the creation of a trust, a trust-*res* or subject matter is a *sine qua non;* and while one may create a trust in his own property by constituting himself a trustee, provided his words and acts clearly and unequivocally denote an intention to hold the property henceforth as trustee for the benefit of another, it is necessary that there be specific property to be held by the settlor as trustee and an absolute parting by him with that beneficial interest which had been his up to the declaration of the trust.

[3] ID.—CONVEYANCE OF EQUITABLE INTEREST IN LAND—AGREEMENT TO SECURE LEGAL TITLE.—Where the owner of the equitable title

61 Cal. App.—21

to certain real property conveys that title to others, and at the same time executes a writing by which he enters into the purely personal obligation to cause the holder of the legal title to said property to convey that title to the grantees of his beneficial interest, he does not thereby constitute himself a "trustee," in any true sense of the term.

[4] ID. — CONVEYANCES OF FRACTIONAL INTERESTS — RESERVATION OF OIL RIGHTS—TRUSTEES—ASSOCIATIONS.—The execution of deeds whereby the grantor conveys to certain grantees separate undivided interests in real property, reserving certain fractional interests or royalties in all oil and gas produced on the land and reserving also to himself the right to prospect and drill for oil and gas on the land and sell the same, each deed containing a clause whereby the grantor personally convenants to pay to the grantee the latter's portion of the net proceeds, does not constitute said grantor a "trustee"; and the grantees under such deeds do not constitute an "association," within the meaning of the Corporate Securities Act.

PROCEEDING on Habeas Corpus to secure the release of petitioner from custody under a warrant charging a violation of the Corporate Securities Act. Petitioner discharged from custody.

The facts are stated in the opinion of the court.

Ben S. Hunter and Earl D. Killion for Petitioner.

U. S. Webb, Attorney-General, Erwin W. Widney, Deputy Attorney-General, Thomas Lee Woolwine, District Attorney, Tracy C. Becker, Deputy District Attorney, and Farrand & Slosson for Respondent.

FINLAYSON, P. J.—This is a *habeas corpus* proceeding wherein the petitioner seeks his discharge from imprisonment under a warrant of arrest issued on a complaint against him in the justice's court. The complaint attempts to charge him with a violation of the Corporate Securities Act. The ground of his application is that the pleading does not charge him with a public offense.

The pertinent provisions of the Corporate Securities Act (Stats. 1917, p. 673, amended 1919, p. 231, 1921, pp. 1008, 1114) are the following: Section 2 defines certain of the words and phrases used throughout the act. Subdivision 3 of section 2 declares that "the word 'company' includes

all domestic and foreign, private corporations, associations, joint stock companies, and partnerships, of every kind, and also trustees, as hereinafter defined." By subdivision 4 it is provided that "the word 'trust' as used in this act includes all voluntary trusts, as the same are defined in the Civil Code, expressly created by or declared in an instrument in writing, . . . to carry on any business or to secure the payment or repayment of money." Subdivision 5 declares that "the word 'trustee' . . . includes only persons or companies executing trusts as hereinbefore defined." Section 3 provides that "no company shall sell . . . any security of its own issue until it shall have first applied for and secured from the commissioner a permit authorizing it so to do."

The complaint was drawn upon the theory that petitioner is a "trustee" within the meaning of the act, or that the eight persons with whom he entered into the agreement hereafter described constituted an "association," that in either event there was a "company," within the definition of the act, and that petitioner sold the "securities" of such "company" without having secured from the corporation commissioner the necessary permit.

The case disclosed by the complaint filed in the justice's court is substantially as follows: Attached to the pleading and made a part thereof are two exhibits, marked respectively "A" and "B." The latter bears date September 11, 1922. Exhibit "A" is a blank form of deed. It gives the form of the "securities" which it is claimed petitioner illegally issued. Exhibit "B" is the copy of an agreement executed by petitioner, as the party of the second part, and by eight other persons as the parties of the first part. It seems to be conceded that the gist of the "offense" attempted to be charged in the criminal complaint lies in the fact that petitioner executed to two of the eight persons with whom he executed exhibit "B," namely, D. R. Beatty and A. Frank, deeds which, as to form, were substantially replicas of exhibit "A." Whether the complaint states a public offense or not is largely, if not entirely, dependent upon the character of these two exhibits.

Exhibit "B," whose execution evidently preceded the deeds to Beatty and Frank, recites the following: (1) Petitioner is drilling an oil well on a certain piece of real

property in the county of Los Angeles; (2) the eight parties of the first part desire to become associated with petitioner in the enterprise and to participate in the future possible profits; (3) the legal title to 1890/4000 of the land is vested in the State Torrens Title Company (hereafter for brevity referred to as the Title Company); (4) the Title Company holds such legal title in accordance with an agreement between it and petitioner, by the terms of which the Title Company agrees to grant to petitioner, or to his nominee or nominees, on petitioner's request and after the completion of the well-drilling then in progress, various undivided interests; and (5) the times when the Title Company shall grant such undivided interests to petitioner, or to his nominee or nominees, are specifically set forth in a written agreement between petitioner and Philip A. Grohs and Edward L. Journigan.

Following these recitals exhibit "B" provides: The Title Company, when requested by petitioner, is to convey to the eight parties of the first part at least an undivided 390/4000 of the property "as per form of deed attached." The form of deed referred to is, we assume, that which is afforded by exhibit "A." Then follows a paragraph setting forth the proportionate amount of the 390/4000 which is to be granted to each of these eight persons. For example, of the 390/4000 there is to be granted to D. R. Beatty and A. Frank 150/4000 and 75/4000, respectively. It then is declared that the 390/4000 so to be granted to the parties of the first part by the Title Company is given by petitioner as a *bonus* for $26,000 which the parties of the first part agree to "advance" to petitioner for the purpose of completing the well then being drilled upon the property. Then follows a covenant on the part of petitioner, as the party of the second part, whereby he agrees that out of the net proceeds of all oil and gas produced on the property and accruing to him by virtue of his ownership of the equitable title to the 1500/4000 which will remain in him he will pay to the parties of the first part the sum of $39,000. From the recitals and covenants in exhibit "B" it appears, inferentially, that at the date of its execution petitioner was the equitable owner of the 1890/4000 the legal title whereto was in the Title Company, and that if there should be granted to the eight parties of the first part an undivided 390/4000, peti-

tioner would remain the equitable owner of an undivided 1500/4000 of the land.

Exhibit "A" is, in part, as follows:

"Grant Deed.

"E. A. Lamb [petitioner] . . . does hereby grant to —— all that real property situate in the county of Los Angeles, State of California, and described as follows, to wit: ——/4000ths undivided interest in [here follows the description of 8 lots], subject to: 1. A reservation of one-eighth of all oil and gas produced on the above described property, in favor of George Bowman. . . . 2. A reservation of one-eighth of all oil and gas produced on the above described property, in favor of Philip A. Grohs and Edward L. Journigan. . . . 3. A reservation by E. A. Lamb . . . of the right to prospect and drill for oil and gas on the aforesaid land, to mine and extract the same, and to sell and dispose of the oil and gas produced from such operations; yielding and paying to the grantee his proportion of seventy-five (75) per cent. of the net proceeds of all oil and gas produced, accounting therefor to the grantee every sixty days for the net proceeds from the operations during the preceding sixty days; and the right hereunder reserved to continue in force so long as oil and gas be produced in paying quantities, the net proceeds to be computed from, and begin at, the time the first well is completed and put on production by E. A. Lamb, the intent being that E. A. Lamb shall not charge to production the cost of drilling one well to a depth of 4,500 feet, unless oil be obtained in paying quantities at less depth. No part of the cost of the first well shall, in any case, be charged to the grantee herein. Witness my hand this —— day of ——, 192—."

In the body of the criminal complaint substantially the following is alleged: On September 11, 1922, petitioner "was conducting a business of an association" composed of a number of persons whose names are unknown. As a part of the agreement under which the "association" was operating (exhibit "B") petitioner "was then and there trustee for each and all of said persons." The "rights and interests of said persons so being members of said association and the capital stock and property of said association and of each of said members were represented by certain certificates of interest into which the whole of said property . . .

was divided." Said certificates of interest are fully evidenced and set forth in a grant deed which was to be executed by petitioner to all the persons who purchased an interest in the association and became members thereof. Exhibit "A" is a copy of the form of such deed. "The estate and interest of the said E. A. Lamb in and to the real estate and property and in and to the oil and gas produced on said property . . . and covered by said certificate and grant deed, then and there were and are determined, prescribed and fully expressed in a certain agreement in writing [exhibit 'B'] made and entered into the 11th day of September, 1922." "Said association was a company and a corporation carried on for profit." For the company and the association and the members thereof "said E. A. Lamb was a trustee as hereinbefore set forth, *and as fully evidenced . . . by* said exhibits 'A' and 'B'" (italics ours). Petitioner, on September 11, 1922, for a valuable consideration, executed and sold, "certain securities of said association and of said E. A. Lamb" by executing to D. R. Beatty a deed to an undivided 150/4000 of the land and to A. Frank a deed to an undivided 75/4000 thereof.

[1] These allegations in the body of the complaint must be read in the light of the two exhibits attached thereto and made a part thereof. So read, it is manifest that it is from those exhibits that we must determine the precise nature of the rights and interests alleged to have been sold by petitioner to Beatty and Frank; also the status of petitioner, i. e., whether he was a "trustee" within the meaning of the Corporate Securities Act, and whether the eight persons named in exhibit "B" as the parties of the first part constituted an "association" within the meaning of the act.

The theories advanced in the brief filed on behalf of the officer to whom the writ of *habeas corpus* was directed are: (1) The Title Company was a "trustee" within the meaning of the Corporate Securities Act, and in executing the deeds to Frank and Beatty petitioner aided that "trustee" in issuing and selling its "securities"; (2) petitioner himself was a "trustee" within the meaning of the act, and as such "trustee" he issued and sold "securities" when he executed the deeds to Beatty and Frank; and (3) the eight persons with whom petitioner entered into the agreement (exhibit "B") constituted an "association," within the mean-

ing of the act, and in executing the deeds to Beatty and Frank petitioner issued and sold the ''securities'' of that ''association.'' Petitioner disputes, and, as we think, correctly disputes, the validity of each of these theories.

But little space need be given to the claim that the Title Company was a ''trustee'' whose securities petitioner issued. The criminal complaint was not drawn upon that theory. Its charge is that, as a part of the agreement under which the ''association'' was operating (exhibit ''B'') petitioner, not the Title Company, ''was then and there the trustee for each and all of said persons so being members of said association.'' Moreover, it is clear that whether the Title Company was or was not a ''trustee,'' the complaint is barren of any showing that petitioner did anything to aid in the execution of any trust which the Title Company may have assumed. A ''trustee,'' as that word is used in the Corporate Securities Act, includes only persons or companies ''*executing* trusts as hereinbefore defined.'' (Sec. 2, subd. 5.) When petitioner deeded to Beatty an undivided 150/4000 and to Frank an undivided 75/4000 of the land, subject to the reservations contained in each deed, he but conveyed his own equitable title to certain undivided interests in the land, and nothing was done in the execution of any trust which the Title Company may have accepted. So far as that company's title is concerned no change was effected by the deeds which petitioner executed. Indeed, it is expressly alleged in the criminal complaint that petitioner's estate and interest ''were and *are* determined, prescribed and fully expressed'' in exhibit ''B''—showing that the Title Company was still the holder of the legal title at the date of petitioner's deeds to Beatty and Frank.

Petitioner was not a ''company'' in the sense that he was a voluntary ''trustee'' within the meaning of the act. He was not a voluntary trustee unless he became such by his execution of one of the exhibits. Exhibit ''B'' did not create a ''trust'' in any sense of the word. Section 2216 of the Civil Code declares that ''a voluntary trust is an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another.'' It is argued by counsel opposing petitioner here that exhibit ''B'' imposed upon petitioner an obligation in favor of the eight persons with whom he contracted; that such obliga-

tion arose out of a "personal confidence" reposed in and voluntarily accepted by petitioner; and that therefore exhibit "B" did create a voluntary trust, as that word is defined by the Civil Code.

It is true that every voluntary trust is an obligation arising out of a personal confidence reposed in and voluntarily accepted by one for the benefit of another. But the converse is not necessarily true. That is, not every obligation arising out of a personal confidence reposed in and voluntarily accepted by one for the benefit of another is a trust, within the legal meaning of the term. It often happens that a purely personal obligation, unconnected with any property or with any trust-*res* arises out of a "personal confidence"—an obligation in nowise connected with any estate or title held by the obligor for the benefit of the obligee. Such personal obligations do not constitute "trusts" in any true sense of the word. **[2]** To the creation of a trust, a trust-*res* or subject matter is a *sine qua non*. (*Martin* v. *Powell*, 200 Ala. 46 [75 South. 358]; *Bay Biscayne Co.* v. *Baile*, 73 Fla. 1120 [75 South. 860]; 39 Cyc., p. 34.) "In order for trusts to exist there must be an estate to vest in the trustee, and the property must be clearly and definitely pointed out." (*In re Johnson's Estate*, 100 Or. 142 [196 Pac. 385, 1115].) Section 2221 of the Civil Code declares that "a voluntary trust is created . . . by any words or acts . . . indicating with reasonable certainty . . . the *subject*, purpose and beneficiary of a trust." "Trusts arise when property has been conferred upon one person and accepted by him for the benefit of the other. In order to originate a trust two things are essential: First, that the ownership conferred be connected with a right or interest or duty for the benefit of another; and, second, that the property be accepted on these conditions." (*Carr* v. *Harrington*, 107 Ark. 535 [155 S. W. 1166].) "A trust implies two estates or interests—one equitable and one legal; one person, as trustee, holding the legal title, while another, as *cestui que trust*, has the beneficial interest." (*Hospes* v. *Car Co.*, 48 Minn. 174 [31 Am. St. Rep. 637, 15 L. R. A. 470, 50 N. W. 1117].) "To the constitution of every valid express trust it is essential that there should be a trustee, an estate conveyed to him, a beneficiary, a legal purpose, and a legal term." (*In re Walkerly*, 108 Cal. 650 [49 Am.

St. Rep. 97, 41 Pac. 776].) True, it is not essential that the creator of a trust should constitute a third person trustee and transfer the legal title to him. It is well settled that one may create a trust in his own property by constituting himself a trustee, provided his words or acts clearly and unequivocally denote an intention to hold the property henceforth as trustee for the benefit of another; and as the nature and effect of such a transaction is that the title remains in the settlor who constitutes himself a trustee for the benefit of the other, no transfer or assignment of the title is necessary. (39 Cyc. 66.) But even so, it still is necessary that there be specific property to be held by the settlor as trustee, and an absolute parting by him with that beneficial interest which had been his up to the declaration of the trust. (*Taylor* v. *Coriell,* 66 N. J. Eq. 262 [57 Atl. 810].)

[3] Nowhere in exhibit "B" does petitioner undertake to hold any property in trust for or for the benefit of another. He simply entered into the purely personal obligation to cause the holder of the legal title, the Title Company, to convey certain interests to the eight persons with whom he was dealing. It follows, therefore, that exhibit "B" did not constitute petitioner a "trustee," in any true sense of the term.

[4] Nor was petitioner made a trustee by exhibit "A" or by either of the deeds which he executed to Beatty and Frank, each of which followed the form set forth in exhibit "A." By these deeds petitioner, as grantor, deeded to each grantee a certain undivided interest in the land, with reservations, namely, a reservation in favor of one Bowman of one-eighth of all the oil and gas produced on the land, a reservation of another one-eighth of all oil and gas in favor of Grohs and Journigan, and a reservation to himself of the right to prospect and drill for oil and gas on the land and to sell the same. In connection with the reservation to himself, each deed contains a clause whereby petitioner personally covenants to pay to his grantee the latter's proportion of the net proceeds of the oil and gas.

By each of these deeds petitioner did the following: (1) Subject to the reservations, he conveyed absolutely to each grantee his own equitable title to a certain undivided part of the land; and (2) he personally covenanted to pay

to each grantee a certain fractional part of the proceeds of possible future sales of oil and gas. Such a deed left nothing in the grantor which could be the subject of a trust. With respect to the interest actually conveyed to each grantee, petitioner parted with all of the title which he possessed. No title remained in him which could be held in trust for the grantee. The clause whereby he personally covenanted to account for and pay to his grantee a certain proportion of the proceeds of future sales of oil and gas was but a promise to pay over moneys which, possibly, he might thereafter receive. "A mere promise to obtain money and thereupon hold it in trust does not create a trust until it is at least so far executed that the money has been obtained in accordance with the promise." (*Molera* v. *Cooper,* 173 Cal. 262 [160 Pac. 232].)

For these reasons we conclude that the criminal complaint fails to show that petitioner was a "company" in the sense that he was a "trustee" within the meaning of the Corporate Securities Act.

It next is claimed by counsel opposing the writ that if petitioner was not a "trustee" the eight persons who executed exhibit "B" as parties of the first part constituted an "association," within the meaning of the act, and that therefore they were a "company," as defined by the act, and that petitioner sold the "securities" of each company.

The word "association," a word of vague meaning, is not specifically defined in the Corporate Securities Act. It has been defined as "a body of persons acting together without a charter, but upon methods and forms used by incorporated bodies, for the prosecution of some common enterprise." (*People* v. *Brander,* 244 Ill. 26 [135 Am. St. Rep. 301, 18 Ann. Cas. 341, 91 N. E. 59]. See, also, 5 C. J. 1333.) For the purposes of this decision we shall assume that the eight persons with whom petitioner executed exhibit "B" did constitute themselves an "association" within the meaning of the act, when they entered into the agreement evidenced by that instrument. But even so, there is nothing in the criminal complaint tending to show that petitioner ever issued or sold or aided in the issuance or sale of any of the "securities" of that association.

The "securities" which may not be issued or sold without the permission of the corporation commissioner are the "shares, or other interests or rights, into which the . . . property of companies . . . or rights of . . . members thereof are divided, . . . and all certificates and other instruments issued by them or their authority, evidencing or representing such shares, interests or rights"; also "any instrument issued or offered to the public by any company" evidencing any right to participate in the profits or earnings or the distributions of assets of any business carried on for profit by the company. According to these definitions it is unlawful (1) to sell, without the requisite permission, any interest in property which is owned by an association or by its members; (2) to issue, without such permission, any instrument evidencing an interest in property owned by the association or by its members; or (3) to issue or offer to the public any instrument evidencing any right to participate in the profits or earnings or the distribution of the assets of any business carried on by the association for profit.

Petitioner did nothing that amounted to the issuance or sale of a "security," within the foregoing definitions. There is some question as to whether the deeds to Beatty and Frank may be regarded as having been made in furtherance of the agreement evidenced by exhibit "B." By that agreement petitioner did not agree that he would convey property to anyone. What he did undertake to do was to cause the Title Company, the holder of the legal title to an undivided 1890/4000, to convey to the eight parties of the first part, just as soon as it should be free to do so, an undivided 390/4000 of the property, free and clear of all encumbrances, except taxes, and subject to certain reservations.

If petitioner's deeds to Beatty and Frank may not be deemed to have been executed pursuant to exhibit "B," then petitioner was but conveying his own equitable title to an undivided 150/4000 of an undivided 75/4000, respectively, to each of two grantees, as he had the right to do without securing the permission of anyone. If, on the other hand, the deeds to Beatty and Frank may be deemed to have been executed pursuant to the terms of exhibit "B," and if the eight persons designated therein as the parties of the first

part did constitute an "association," then by his deeds to Beatty and Frank petitioner simply conveyed certain interests to two members of that association, either for their own exclusive use and benefit or for the benefit of themselves and the six other members of the association. But in either case the deeds were conveyances, not *by* but *to* members of the association. There was, therefore, no conveyance of any interests owned by the association or by its members. The language of the act is: "No company shall sell . . . or offer for sale . . . any security *of its own issue* until it shall have first applied for and secured from the commissioner a permit authorizing it so to do." (Section 3.)

Nor did petitioner by either of his deeds to Beatty and Frank issue an instrument evidencing an interest in property owned by the association or by its members. On the contrary, each deed was, as we have shown, an instrument evidencing an interest thereby conveyed to, not by, members of the association. Nor was either deed an instrument "issued or offered to the public" by the association.

It may be that if hereafter any member of the association shall attempt to sell to third parties any part of the 390/4000 without the permission of the corporation commissioner he would thereby subject himself to the pains and penalties of the act. But that is not this case. It is not necessary to decide, and we do not decide, whether such permission would be necessary in that event.

There is no conflict between these views and those set forth in the *Matter of Girard,* 186 Cal. 722 [200 Pac. 593], and *Agnew* v. *Daugherty,* 189 Cal. 446 [209 Pac. 34]. In the Girard case the petitioner and three other persons were trustees for a "company." As one of such trustees Girard issued and sold to third persons certain interests of the company. That case might be applicable if the petitioner here had executed to a person not a member of the association a deed or other instrument conveying any interest belonging to the association or to its members. In the Agnew case the petitioner had conveyed mining property to certain persons as trustees under an instrument which provided for the negotiation and sale of trust certificates evidencing 3,000 "interests" in the property. Agnew proposed to begin the sale of the "interests" represented by such certificates. That is, he proposed to sell the property of the "company."

In the instant case the utmost that can be claimed is that petitioner vested the association or members thereof with its or their rights, and title to the property.

For the foregoing reasons we are constrained to hold that the facts set forth in the complaint against petitioner fail to show that he has violated any provision of the Corporate Securities Act.

Petitioner should be discharged from custody, and it is so ordered.

Works, J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 7, 1923.