[Crim. No. 1219. Second Appellate District, Division Two.—December 8, 1925.]

THE PEOPLE, Respondent, v. F. L. MAIN, Appellant.

[1] CRIMINAL LAW—INDICTMENT—CORPORATE SECURITIES ACT—SALE OF SECURITIES BY PRIVATE PARTY WITHOUT PERMIT.—The Corporate Securities Act does not prohibit one from selling his privately owned securities without a permit or license, provided his transactions do not bring him within the classification of "dealer" or "broker," and an indictment in a prosecution for selling securities without a permit or license in violation of said act need not negative such exception, for it forms no part of the definition of the offense.

[2] ID.—ESTOPPEL—APPLICATION OF DOCTRINE—BASIS FOR ESTOPPEL.—The doctrine of estoppel is infrequently invoked in criminal cases; and where applicable it does not differ in principle from the same rule when used in a civil action, and the rule and the reason for it are the same whether the estoppel rests in judgment, deed, contract, or in pais.

[3] ID. — ESTOPPEL BY MISREPRESENTATION — ESSENTIAL ELEMENTS. — The essentials of estoppel by misrepresentation are that the estoppel asserter must be a person to whom, mediately or immediately, the representation was made, and he must, on the faith of the misrepresentation, have changed his position prejudicially.

[4] CORPORATE SECURITIES ACT—SALE OF CORPORATE STOCK WITHOUT PERMIT—EXISTENCE OF CORPORATION—ESTOPPEL.—In this prosecution for a violation of the Corporate Securities Act under an in-

1. Blue sky laws, notes, 24 A. L. R. 523; 27 A. L. R. 1169; 30 A. L. R. 1331; 40 A. L. R. 1005.
3. See 10 Cal. Jur. 636; 10 R. C. L. 697.

dictment charging defendant with selling and issuing shares of the capital stock of a corporation which had not obtained a permit to issue or sell its stock, and that without having first obtained a permit or license so to do from the corporation commissioner he engaged in the business of selling shares of stock of the same corporation, the prosecution is not in a position to assert that defendant was estopped to deny the corporate existence of the company, but having alleged it was required to prove such corporate existence.

[5] ID. — CORPORATE EXISTENCE — EVIDENCE.—In such prosecution, the use, in contracts introduced by defendant and purporting to be purchase contracts of "capital stock" in a company, of the word "company" and of a name designating a certain oil company is insufficient to prove that the company was a corporation, since within the meaning of section 2 of the Corporate Securities Act the meaning of the phrase "capital stock" is not limited to shares in a corporation.

[6] ID.—BURDEN OF PROOF—NEW TRIAL.—In such prosecution the burden rested with the People to prove beyond a reasonable doubt every fact essential to a conviction, and in the absence of proof that the company was a corporation, as alleged in each count of the information, the People's case was incomplete and the motion for new trial after verdict of conviction should have been granted.

(1) 31 C. J., p. 720, n. 58; 37 C. J., p. 273, n. 71, p. 279, n. 71. (2) 16 C. J., p. 98, n. 70 New. (3) 16 C. J., p. 98, n. 70 New. (4) 16 C. J., p. 98, n. 70 New; 37 C. J., p. 279, n. 71. (5) 9 C. J., p. 1280, n. 74; 37 C. J., p. 279, n. 73. (6) 16 C. J., p. 54, n. 49, p. 540, n. 70, p. 541, n. 76; 21 C. J., p. 1180, n. 32, 34, p. 1181, n. 40; 37 C. J., p. 279, n. 74.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Carlos S. Hardy, Judge. Reversed.

The facts are stated in the opinion of the court.

Anderson & Anderson, T. E. Parks and B. V. Elconin for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

CRAIG, J.—The defendant and appellant was charged by indictment in the county of Los Angeles with having violated the Corporate Securities Act. It was alleged in four counts

thereof that on the respective dates therein mentioned he sold and issued shares of the capital stock of a corporation which had not obtained a permit to issue or sell its stock; and in a fifth count that without first having obtained a permit or license so to do, from the commissioner of corporations, he engaged in the business of selling shares of the stock of the same corporation on the dates specified in the first four counts. General and special demurrers were interposed, which were overruled, and the defendant was convicted by a jury upon each of said counts. Motion for a new trial was thereafter presented and overruled, and this is an appeal from the judgment and the ruling upon said motion.

[1] ·The charging part of the first four counts of the indictment to which exception was taken by demurrer and which constitutes the basis of attack here, alleged that "the said F. L. Main did then and there wilfully, unlawfully, knowingly and feloniously, and for a valuable consideration, sell and issue, and aid and abet some person or persons to complainant unknown in selling and issuing to one Carrie Bowman" certain shares of the capital stock of the Southern Oregon Oil and Gas Company, a corporation. It is said that inasmuch as none of the counts alleged that the stock was not the privately owned property of the defendant, each count failed to charge a public offense; that he might lawfully sell his own stock, and that in this respect the alleged sales would fall within an exception to the penal provisions of the act. It is doubtless true that the statute in question does not attempt to prohibit one from selling his privately owned corporate securities without a permit or license, provided his transactions do not bring him within the classification of "dealer," or "broker." (*In re Lamb*, 61 Cal. App. 321 [215 Pac. 109].) However, the indictment need not negative such exception, for it formed no part of the definition of the offense. (*People* v. *Jevne*, 179 Cal. 621 [178 Pac. 517]; *People* v. *Cencevich*, 64 Cal. App. 39, 44 [220 Pac. 448].) Another ground of demurrer, that the indictment failed to state by whom the stock was owned, or that it was not owned by the defendant, was directed at the fifth count; and in connection with both grounds it is insisted that there was no evidence tending to show the facts as to which the indictment is said to be silent. The principles

above stated apply to these criticisms, and we think that further discussion of the matter is not necessary.

The most serious point raised is that there is an entire lack of proof to support the allegation that the Southern Oregon Oil and Gas Company was a corporation having a capital stock. The indictment alleged in that behalf that "the Southern Oregon Oil and Gas Company was then and there a corporation having a capital stock"; that it had no permit to issue, nor did the defendant have a permit to sell, such stock; that said stock was a "security," and that "the crime of violation of the corporate securities act, a felony, was committed by the said F. L. Main," in that he did wilfully, unlawfully, knowingly, and feloniously, for a valuable consideration, sell and issue shares of the capital stock of said corporation.

"The securities which may not be issued or sold without the permission of the corporation commissioner are the 'shares, or other interests or rights, into which the . . . property of companies . . . or rights of . . . members thereof are divided, . . . and all certificates and other instruments issued by them or their authority, evidencing or representing such shares, interests or rights'; also 'any instrument issued or offered to the public by any company' evidencing any right to participate in the profits or earnings or the distribution of assets of any business carried on for profit by the company." (*In re Lamb*, 61 Cal. App. 321, 331 [215 Pac. 109].)

The evidence offered by the People to prove the existence of the corporation was the testimony of witnesses that the defendant represented it to have been incorporated, and exhibited prospectuses, printed subscription contracts, and purported stock certificates, which were introduced at the trial, and that he had in his possession a book of printed stock certificates, all of which bore the name of the purported corporation. It is urged by the prosecution that, in view of the evidence referred to above, had this been a civil action the defendant would have been estopped to deny that the Southern Oregon Oil and Gas Company was a corporation, and further proof of that allegation would have been unnecessary.

Comparatively few criminal cases are to be found in the books where the facts create a situation permitting the ap-

plication of the doctrine of estoppel. However, we are referred to several embezzlement cases where estoppel has been invoked against a defendant. In both *People* v. *Hedley*, 31 Cal. 108, and *People* v. *Treadwell,* 69 Cal. 226 [10 Pac. 502], the defendants were held estopped to deny that the relationship of principal and agent existed between them and the persons whose principals they had respectively held themselves out to represent, and thus secured the money in question. In *People* v. *Leonard,* 106 Cal. 302 [39 Pac. 617], the defendant was not allowed to deny that the corporation whose agent he had admittedly been was such corporation. Other cases to the same or similar import might be mentioned. In *People* v. *Royce,* 106 Cal. 173 [37 Pac. 630, 39 Pac. 524], language is contained in the opinion to the effect that the defendant, having received a draft, a part of the proceeds of which he was charged with having embezzled, could not be permitted to say that he was not authorized to receive the money as treasurer of a certain association, or that the association was not entitled to it, or that the draft was not a valid one. While these and a few other examples are to be found in which the rule of estoppel has been invoked against a defendant in a criminal action, the extreme infrequency of such instances suggests caution in extending its application. We are accustomed, in criminal cases, to regard the presumption of innocence as universally placing the burden of proof upon the People to establish every essential element of the offense charged, beyond a reasonable doubt. In none of the opinions which we have examined upholding the application of the rule of estoppel is any reference made to the presumption of innocence or the fact that a plea of not guilty is in itself a denial of every element involved in the charge to which that plea is entered. In fact, in none of these decisions is there to be found more than the statement of a conclusion that under the circumstances considered the defendant could not be heard to deny the fact as to which he was held estopped, with the further intimation, in certain instances, that to hold otherwise would be inequitable and place a premium on dishonesty.

It is true that the rules of evidence are generally the same in criminal and civil cases. (Pen. Code, sec. 1102.) [2] Undoubtedly wherever the doctrine of estoppel is ap-

plicable in a criminal case it does not differ in principle from the same rule when used in a civil action. Also, whether the estoppel rests in judgment, deed, contract, or *in pais,* the rule and the reason for it are the same. (*Allen* v. *Hance,* 161 Cal. 189 [118 Pac. 527].) If the defendant is to be held estopped in the instant case to deny the corporate existence of the Southern Oregon Oil and Gas Company, the type of the estoppel would necessarily be by misrepresentation. **[3]** It is elementary that among the essentials of this class of estoppel (as well as of all others for that matter) are: The estoppel asserter must be a person to whom, mediately or immediately, the representation was made; also the estoppel asserter must, on the faith of the misrepresentation, have changed his position prejudicially. (Ewart on Estoppel, p. 10.) In none of these decisions in the embezzlement cases above referred to or others of a similar nature which we have examined is any attempt made to explain upon what theory the state is held to be authorized to assert an estoppel against a defendant when these essentials are taken into account. Hence, in reviewing these authorities, it is impossible to do more than speculate as to the reasoning which may have been applied therein. Of course, in a criminal case the prosecuting witness is only a witness and not a party to the proceeding. The action is one in which the People of the state are plaintiff, and no one else. If instead of being a criminal prosecution the same transaction were before the court in a suit by the complaining witness to recover damages for conversion, the plaintiff, having been the one to whom the representations had been made, and who had changed his position prejudicially on the faith of them, would clearly have the right to assert the estoppel. It would seem that if the state is to be allowed the same right in an embezzlement case it must be on the theory that in that behalf and for that limited purpose it is, so to speak, subrogated to the rights of the person who would be the estoppel asserter in a civil action involving the same alleged wrong. It is plain that the state could not qualify as an estoppel asserter, based upon any claim of its own against the defendant; the representations were not made to it, nor has it parted with anything or in any way changed its position prejudicially by reason of the deceit which was practiced.

Some individual, usually the complaining witness, would be damaged if the estoppel were not maintained, and if it were a civil action in which his rights were involved. The state having taken up his cause, and in a sense having assumed to vindicate the wrong done him, may reasonably say to the defendant in the language of Lord Mansfield, "No, it shall be as you represented it to be. No man shall set up his own iniquity as a defense, any more than as a cause of action." And it is true that while in a criminal action the People constitute the plaintiff, punishment for the offense through a criminal prosecution is one form of redress granted to the individual for the vindication of a wrong. Hence, a person injured, though not strictly a party to the action, is so far interested in it as that the state in punishing the wrongdoer may assert an estoppel in his behalf where it is necessary or proper to provide that form of vindication.

[4] But while these considerations might uphold the use of an estoppel as against the defendant in a prosecution for embezzlement, obtaining money under false pretenses, or similar offenses, they furnish no support for the same procedure in the instant case. Here, the person to whom the representations were made is entirely disinterested in the outcome. She did change her position by reason of them, but, so far as the evidence discloses, not to her prejudice. Indeed, evidence to show that she was damaged, if such were the case, would be irrelevant and immaterial. No wrong done to her is the subject of vindication in this action. Whether the defendant is permitted to deny the corporate existence of the Southern Oil and Gas Company, or is estopped to do so, is a matter of complete unconcern to her. Her interest is as casual as that of a bystander who witnesses a robbery. It follows that the embezzlement and other cases to which we have referred furnish no support for the contention that the state is in a position to assert an estoppel against this defendant.

Unlike these cases, the instant prosecution is one which in no way involves the redress of a wrong done to any individual. The offense committed by the defendant, if any there be, is strictly *malum prohibitum,* and wrong only because it violates a statute intended to regulate the sale of securities; it is a wrong primarily and exclusively against

the state. The outstanding facts in the offense are (1) that the Southern Oregon Oil and Gas Company was a corporation; (2) that the defendant sold securities of the Southern Oregon Oil and Gas Company, a corporation; (3) that at the time of making such sale he had secured no license so to do as required by law; and (4), that at the time of making such sale the corporation had not obtained a permit from the commissioner of corporations of this state to issue or sell its capital stock. Each of these is an integral part of the *corpus delicti*, without proof of which the state would necessarily have failed to make out a case. If invoked here as urged by the respondent, estoppel would deny the defendant the right to prove that what he sold were not securities. It would prevent him from disproving the existence of an essential element of the offense in question, to wit, the corporate existence of the Southern Oregon Oil and Gas Company, and thus bar him from showing that he had not violated the act under which he was charged. Indeed, it would result not only in convicting him upon his extrajudicial statements alone, but in denying him the right to show, though able to do so to the point of demonstration, his complete innocence of any offense charged against him. Obviously, unless the Southern Oregon Oil and Gas Company was a corporation, proof of the other facts would fall. The other evidence even remotely bearing upon the subject was that of a witness who testified that he was told by Main that O'Connor was field manager, and that he "supposed" some other men whom he saw at the well were working for the company. It is apparent that this adds nothing to the People's case in this behalf. We think that, having alleged it, the People were obliged to prove the corporate existence of the company, and could not rely for that purpose upon any asserted estoppel.

[5] We have considered all of the evidence produced by the People having a tendency to prove that the Southern Oregon Oil and Gas Company was a corporation. Reference is now made to certain exhibits introduced by the defendant in connection with the cross-examination of the People's witnesses. These exhibits purport to be purchase contracts. They are identical, except for the figures referring to the number of shares purchased. Defendant's exhibit "A" is as follows:

"Purchase Contract

To F. L. Main
    of New York City, N. Y.

Dated April 19th 1920
at El Monte, Calif.

I hereby contract for and agree to purchase from you 300
——shares of the issued capital stock of the Southern Ore-
gon Oil and Gas Co. at $1 00/100 per share and pay for
same as follows:

Cash.                          Name       Carrie Bowman
Accepted                       Address    El Monte Cal.
F. L. MAIN                      Banking Reference ....
    By .............."

This evidence cannot aid the People. The use of the name
"Southern Oregon Oil and Gas Company" is insufficient to
prove that it is a corporation. (*Briggs* v. *McCullough,* 36
Cal. 542; *People* v. *Cherniak,* 216 Ill. App. 423.) Nor do
the words contained in these exhibits, "shares of the issued
capital stock," amount to an admission that the company is
a corporation. While the term "capital stock" is often used
in the sense of the amount derived from the issuance of
shares in a corporation, still its signification is by no means
limited to that definition. On the contrary, it has been de-
fined to be "money invested in business operations, whether
that business is conducted by a single individual, partner-
ship, corporation, or a government." (9 C. J., p. 1280.)
It has been said to be "the amount fixed by partners or their
associates as their stake in the concern." (*Hightower* v.
*Thornton,* 8 Ga. 486 [52 Am. Dec. 412]); also as the fund or
property belonging to a firm or corporation and used to
carry on its business. (*Sanger* v. *Upton,* 91 U. S. 56 [23
L. Ed. 220].) Section 2 of the act known as the Corporate
Securities Act provides that: "The word 'company' includes
all domestic and foreign private corporations, associations,
joint stock companies, and partnerships, of every kind, and
also trustees, . . . " and adds thereto certain exceptions.
This law clearly recognizes that any of the various entities
just enumerated may issue securities and gives the corpora-
tion commissioner jurisdiction over the sale thereof in this
state—and this concerning foreign as well as domestic or-
ganizations. In *In re Girard,* 186 Cal. 718 [200 Pac. 593],
the defendants were prosecuted for a violation of the Cor-

porate Securities Act because they were alleged to have sold unit shares in a common-law trust company, organized in pursuance of a declaration of trust without having secured a permit from the corporation commissioner. The complaint in that action alleged that the defendants "did . . . execute and sell, shares, interests and rights into which the capital stock and the property of said company and the rights of members and holders thereof were divided." Again, the same complaint charged that neither the defendants nor the company in question had obtained a permit from the corporation commissioner to issue or sell any securities of the company or "any shares, interests, or rights into which the capital stock or property of said company and the rights of stockholders and members thereof were divided." Here we have a practical construction of the term "capital stock" in a prosecution under the same act as that in the instant case, using it in the sense of the fund or property belonging to a common-law trust company. If joint-stock companies and similar concerns have capital stock, of course they may issue certificates to purchasers of interests or shares therein. Therefore, as we have said, the fact that the words "company" and "shares of the issued capital stock" are employed in the exhibits introduced by the defendant does not constitute an admission that the legal entity, shares in whose capital stock were contracted to be sold, is a corporation.

[6] But it may be said that if estoppel is not applicable, at least the fact of the corporate character of the Southern Oregon Oil and Gas Company may be presumed, even though the presumption be a rebuttable one, and that although the defendant might overcome it by proof to the contrary, if he does not do so the fact is sufficiently established. The specific charge laid against him was that he sold and issued shares of the capital stock of a company that was "then and there a corporation." The defendant introduced no evidence upon the trial, except three exhibits of the nature mentioned herein, and no presumption arose against him from his failure to do so. (*People* v. *Streuber,* 121 Cal. 431 [53 Pac. 918]; *People* v. *Emmons,* 13 Cal. App. 487 [110 Pac. 151].) The burden rested with the People to prove every fact essential to a conviction, beyond a reasonable doubt. (*People* v. *Ribolsi,* 89 Cal. 492, 500 [26 Pac. 1082]; *People* v. *Gordon,* 88 Cal. 422 [26 Pac. 502].) Hence we

must decide what character of proof is requisite to sustain
this burden, and whether or not that which was offered
measures up to the required standard. In proof of the ex-
istence of a domestic corporation, a copy of its articles of
incorporation, filed as required by the statutes, and certified
by the Secretary of State, or by the county clerk of the
county wherein the original articles shall have been filed,
must be received as *prima facie* evidence of the facts therein
stated. (Civ. Code, sec. 297.) It has been held in criminal
cases that parol proof of a *de facto* corporation is competent
and sufficient, but that it must be proved, like character, by
reputation, and not by the direct statement of a witness.
(*People* v. *Dole,* 122 Cal. 486, 497 [68 Am. St. Rep. 50, 55
Pac. 581].) In *People* v. *Ah Sam,* 41 Cal. 645, the defend-
ant was charged with having possessed, with felonious intent,
certain blank and unfinished bank bills of a foreign banking
corporation, which were false, forged, and counterfeit. It
was there held that the undoubted rule in civil cases, where
the fact of the legal existence of the corporation was in
issue, is that proof of a foreign corporation can only be made
in the same manner as any foreign law or statute is proven,
but that in a criminal case, involving crimes such as forgery
of bank paper, since the existence and character of a bank
is generally well known where its bills are current, proof by
reputation in such matters is not liable to lead to error. In
the absence of proof that this company was a corporation
having a capital stock, the People's case was incomplete, for
each count contained the allegation that it was such a cor-
poration. Therefore, the motion for new trial should have
been granted.

The remaining grounds assigned for reversal involve the
giving and the refusal of instructions. One requested in-
struction which was refused contained matters expressly ap-
pearing in a given instruction to which appellant objects,
and the other instructions complained of followed the allega-
tions of the information. We find no error committed in the
giving or refusing of instructions, and in view of the opinion
above expressed, it is unnecessary to consider other points
raised.

The judgment and order denying the motion for new trial
are reversed.

FINLAYSON, P. J., Concurring.—I concur in the judg-ment, and, in the main, with what is said by Mr. Justice Craig; but upon the question of estoppel I wish to add the following:

To determine whether the doctrine of estoppel can be in-voked by the People in support of the issue respecting the corporate existence of the Southern Oregon Oil and Gas Company, it should first be ascertained, if possible, what is the underlying principle which has induced the courts to sanction the application of that doctrine in criminal cases. Unless we can discover the fundamental reason upon which rests the doctrine of estoppel in criminal cases we are with-out chart to guide or compass to locate the boundary which separates the cases where that doctrine is properly applicable from those where it is not. In none of the decisions brought to my attention was any attempt made to set forth the philo-sophical basis or *rationale* of the rule which sanctions the application of the doctrine of estoppel in criminal prosecu-tions. In many of the decisions the courts, without attempt-ing to probe to the bottom in search for the reason upon which the rule rests, have given unquestioning assent to a *dictum* of Mr. Bishop, and have let it go at that. See *Ex parte Hedley,* 31 Cal. 113, for the language of Bishop.

An analysis of the criminal actions in which estoppel has been held to be applicable discloses that, as between the prosecuting witness and the accused, the former was vested with some sort of private right; that this right was the re-sult of acts of estoppel on the part of the defendant; and that violence had been done to that right by the criminal act which the accused committed against the peace and dignity of the state—his act of criminality being at once both an injury to the wronged individual, furnishing the basis for a civil liability, and an injury to the public, for which a penal liability attached.

Almost all of the criminal actions in which the doctrine of estoppel has been held applicable are cases of embezzle-ment. In that class of cases it has been held that in prose-cutions against an agent or servant for embezzling the money or property of his principal or employer, if the accused has received the money or other thing of value in the assumed exercise of authority as such agent or servant, he is estopped to deny the authority when prosecuted for the embezzlement.

(*Ex parte Hedley, supra; People* v. *Treadwell,* 69 Cal. 226
[10 Pac. 502] ; *People* v. *Gallagher,* 100 Cal. 471 [35 Pac.
80] ; *People* v. *Leonard,* 106 Cal. 302 [39 Pac. 617].) It
also has been held in embezzlement cases that an agent who
has treated his principal as the owner of the property is
estopped to deny the latter's ownership (*State* v. *Whitworth,*
30 Wash. 47 [70 Pac. 254]) ; also that one entrusted with
money or other thing of value is estopped to claim that his
principal obtained it illegally, or that he could not lawfully
possess it under the statute. (*People* v. *Royce,* 106 Cal. 173,
186, 187 [37 Pac. 630, 39 Pac. 524]. See *Sebree* v. *Common-
wealth,* 190 Ky. 164 [227 S. W. 152], and cases there cited.)
It seems clear that in each of these classes of cases the act
of estoppel related only to the private right of a private in-
dividual, usually the complaining witness. Take, for ex-
ample, those embezzlement prosecutions in which it is held
that an agent who has treated his principal as the owner of
the property is estopped to deny the latter's ownership or
his lawful right of possession: It is manifest that in that
class of cases the principal has a private right of property
which he could successfully assert in any civil action which
might be brought by him against his unfaithful agent. The
same is true of that other class of cases where it is held that
the accused is estopped to deny that he received the money
or property in the course of his employment if he received it
in the assumed exercise of authority as an employee or agent
of the prosecuting witness. In that class of cases the com-
plaining witness has a valuable private right based on the
acts of estoppel of the one assuming to exercise the authority.
That is to say, in any civil action brought by him he would
have the right to claim, as against the one assuming to act
as his agent or employee, that the latter received the money
or thing of value in the due course of his employment, and
that, therefore, the self-assumed agent or employee is re-
sponsible to him for all the legal consequences which natu-
rally flow from such assumption of authority. "The word
'rights' is generic, common, embracing *whatever may be law-
fully claimed.* (*Lonas* v. *State,* 50 Tenn. (3 Heisk.) 306.)
(Italics mine.) In *White* v. *Commissioners of Multnomah,*
13 Or. 317 [57 Am. Rep. 20, 10 Pac. 484], it is said that "a
'right' has been defined by Mr. Justice Holmes to be the
legal consequence which attaches to certain facts." Under

these definitions it is clear that in all the cases mentioned by me as examples of the applicability of the doctrine of estoppel in criminal prosecutions, the complaining witness was vested with some sort of a private right arising out of the acts of estoppel, and that this right had been violated by the criminal act committed by the accused.

It cannot be that estoppel is invokable by the People as the direct or primary beneficiary thereof. It is a fundamental principle of estoppel that it operates only between parties to the transaction and their privies. A stranger, who is not a party nor a privy, can neither be bound nor aided. (21 C. J., p. 1180; 2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 813. See *Figg* v. *Handley*, 52 Cal. 244.) In the classes of criminal prosecutions where acts of estoppel may be proved against the defendant, such, for example, as the embezzlement cases cited *supra*, the state, proceeding in its sovereign capacity to punish for an infraction of its criminal laws, is a total stranger to the transaction out of which the estoppel arose. The acts of estoppel did not directly affect any public right, i. e., any right of the sovereign state as distinguished from the private right of the complaining witness, who, by reason of the acts of estoppel, could lawfully claim, in any civil action which he might bring, that certain legal consequences flowed from the estoppel. Nor could it be said in any of those cases that the state was in privity with the complaining witness whose private right attached by reason of the acts of estoppel. A crime has been defined as "a public wrong in that it affects public rights and is an injury to the whole community, considered as a community, in its social aggregate capacity." (16 C. J., p. 54.) It is an act committed against the public and not against an individual merely. The guilty party is prosecuted in the interest of the state and not in the interest of the party injured. (7 Cal. Jur., p. 840.) True, the same act may constitute both an injury to an individual, furnishing the basis for a civil action by him, and an injury to the public, for which a penal liability arises. But when the penal liability is enforced in the interest of the People by criminal proceedings, the only right the injury to which is considered is that public right which is due the whole community, considered as a community, in its social aggregate capacity. For this reason it is impossible for the People to

be in privity with the individual whose private right was violated by the wrongful act of the accused. Equally obvious is it that the People do not "represent" the private right of the individual in the sense that it is a right to which the People have succeeded.

For the foregoing reasons I think it clear that the sole basis for the application of the doctrine of estoppel in criminal cases is the existence in some individual of a private right, depending for its existence upon the acts of estoppel, which right was invaded by the accused when he committed the criminal act against the state. In the ordinary criminal prosecution for embezzlement, where the complaining witness actually owns the money or property embezzled, or actually has some qualified ownership thereof with the right of possession and control, the prosecution, to make out a case against the accused, must, of course, prove such ownership in the prosecuting witness. In a case where the private individual injured by the act of embezzlement does not actually own the money or other thing of value, or has not an actual qualified interest therein, but has, nevertheless, the right to claim ownership as between himself and the accused, based upon the latter's acts of estoppel, he has a certain kind of private right—a right which, in a civil action by him against his unfaithful agent, would constitute the basis for appropriate relief against the wrongdoer. This private right, notwithstanding it rests entirely upon estoppel, may be proved by the prosecution in a criminal action against the wrongdoer for the same reason and for the same purpose that the prosecution may prove ownership in the complaining witness where the latter is in fact the rightful owner. But whether the People prove an actual ownership, as is ordinarily the case, or prove that the accused is estopped to deny ownership, in either event the prosecution does no more than prove the existence of a private right in the complaining witness— a private right which the accused has injured by an act which constitutes at once an injury to the public and an injury to the individual who has been harmed in his private property right. And so where the accused, by his assumption of authority, has estopped himself to deny that he received the money or property in the course of his employment, evidence of the acts of estoppel is admissible, not upon the theory that the estoppel inures to the People as the direct

and immediate beneficiary thereof, but upon the theory that, as between the complaining witness and the accused, the acts of estoppel in effect establish a fact, namely, the relation of principal and agent, which fact is one that appertains to a private right which the accused has criminally violated. "Every fact," says the court in *White* v. *Commissioners of Multnomah, supra,* "which forms one of the group of facts of which the right is the legal consequence appertains to the substance of the right." And so in every other instance in which the doctrine of estoppel has been applied in a criminal action, it will, I believe, be found that the application of the doctrine was but a means of proving the existence of some private right in the complaining witness which had been injured by the criminal act of the accused, even though that right be one which exists only as between the complaining witness and the defendant.

It seems clear to me that the admissibility of acts of estoppel in criminal cases can be justified only upon some such theory as that which I have attempted to outline. In a vigorous dissenting opinion in *State* v. *Dawe,* 31 Idaho, 796 [177 Pac. 393], it is said by Mr. Justice Morgan that "the application of the doctrine of estoppel in criminal cases is of doubtful origin and worse than doubtful soundness." Unless I thought that the application of the doctrine could be justified upon some such theory as that which I have sought to expound, I should feel constrained to agree with the learned author of that dissent. The application of the doctrine of estoppel in criminal cases certainly would be of "worse than doubtful soundness" if it were made to rest upon the notion that the estoppel is invokable by the People as its direct and immediate beneficiary. If that were the theory upon which it rested it would do violence to the fundamental rule that estoppel operates only between parties and their privies.

If the foregoing be a correct exposition of the underlying theory upon which rests the doctrine of estoppel in criminal cases, then that doctrine is not applicable in the instant case. Here the criminal act with which appellant is charged did no injury to the complaining witness or to any of her private rights. The injury was solely to society in the aggregate. It is this which differentiates the present case from those

relied upon by the attorney-general. I therefore concur in the judgment of reversal.

WORKS, J., Concurring.—I concur in the judgment and in the opinion of Mr. Justice Craig, with this exception: I do not concur in what he says upon the subject of estoppel. I think it inexpedient to join in a quest for the reasons upon which the supreme court, in company with other tribunals, has applied the doctrine of estoppel in criminal cases, for I do not think such a search is necessary to a decision of the present action. Upon the question of estoppel I think no more than this need be said: The doctrine has been applied in no criminal case except where the defendant was sought to be punished for a wrongful invasion of the private property right of an individual, which invasion might have been the subject of a civil action by the individual, and in which he might have invoked the estoppel allowed to be asserted in the criminal case. The prosecution here seeks to punish appellant for acts and omissions which did not themselves invade the property right of any individual. There is no estoppel involved in the specific charges here made which any individual could invoke. It seems to me that these are sufficient reasons for the assertion that the criminal cases in which the doctrine has been applied are not authority for its application in the present instance. Laying aside the compulsion of precedents, I can perceive no ground for its application here and respondent has shown us none.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 4, 1926.

Curtis, J., deeming himself disqualified, did not participate.