[Crim. No. 3128. In Bank.—December 27, 1928.]

THE PEOPLE, Respondent, v. M. M. GORDON, Appellant.

Burke & Catlin, Laird L. Neal and Burke, Catlin & Burke for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

PRESTON, J.—This is an appeal by defendant from a judgment of conviction for the crime of embezzlement. Persuasive testimony offered by the prosecution in support of the charges filed against him showed the facts to be substantially as follows:

In December, 1919, one James E. Fisher bought from Robert Marsh & Company of Los Angeles four $1,000 bonds. In October, 1921, he made an unsuccessful attempt to collect the amount due upon them. Immediately thereafter, answering an advertisement, he called at the office of a collection agency in San Diego, where he met one Hinckley, by whom he was introduced to defendant Gordon, an occupant of the same office, who handled the legal end of the business. It was thereupon agreed that these parties should endeavor to collect the amount due upon the bonds and that Fisher should pay court costs in any action brought against Marsh & Company, and also ten per cent of any sum recovered. A contract providing for said ten per cent fee was signed by said Fisher. About ten days later Fisher delivered the bonds to Hinckley and Gordon, accepting in return their receipt therefor. In all five bonds were so delivered, as Fisher had theretofore accepted an additional $500 bond from Marsh & Company in consideration of the dismissal of a prior suit against it and allowance to said company of an extension of time within which to pay the sum due.

About December, 1921, Fisher went to San Diego, where he and defendant signed a complaint prepared by defendant, as attorney, in an action filed by him in the superior court of San Diego County for the purpose of recovering upon said bonds as aforesaid. About this time Fisher paid defendant $100 on account for expenses of litigation. Thereafter, and upon motion of defendant, a change of venue was granted in said action to Los Angeles County, and on February 25, 1922, defendant furnished said Fisher with a letter of introduction to Mr. O. B. Willson of the law firm of Verge and Willson in Los Angeles. The letter requested that Willson do everything possible for Fisher looking toward a settlement of the matter, and added that, if it could not be settled, "Mr. Fisher will want you to assist me in the case." At this time, also, defendant returned the bonds to Mr. Fisher, who in turn delivered them to said law firm of Verge and Willson. Thereafter, and about November, 1923, while the action was still pending, defendant, on behalf of said Fisher, but without his knowledge and consent, entered into an agreement with Marsh & Company for the settlement of said claim, which agreement he signed, "Joseph E. Fisher by M. M. Gordon, his attorney."

By said contract Marsh & Company, in consideration of the dismissal of said suit, agreed to pay the sum of $250 each month upon the Fisher account until the principal indebtedness, with accrued interest, amounting in all to some $5,500, was canceled. The bonds were placed in escrow and were returned to Marsh & Company at the time they made the final payment under said contract. The total indebtedness was paid in installments as stipulated therein, the entire transaction being conducted by Marsh & Company through defendant as attorney for said Fisher, and all payments were received by defendant. Eleven canceled checks were admitted in evidence, each for $250, issued by Marsh & Company, payable to said Fisher and indorsed in the handwriting of defendant, "J. E. Fisher by M. M. Gordon, his attorney." Memoranda were also introduced bearing notations in the handwriting of defendant acknowledging the various payments received from said company. There was likewise admitted in evidence a twelfth check for $589.11, similarly indorsed. It appears that Fisher never received any of the money represented by said eleven checks, but that Gordon turned over to attorney Willson for transfer to Fisher the greater portion of the sum represented by said twelfth check, and a new trial was granted upon the count which had for its basis the transaction surrounding said payment. Upon the other seven counts, each charging defendant with having embezzled on different dates the sum of $250, the personal property of said Fisher, a new trial was denied. Nine other checks were also admitted in evidence, each representing a $250 monthly payment, and these checks were identified as having been received from defendant by attorney Willson, who in turn forwarded them to said Fisher, by whom they were cashed. Said Fisher then returned ten per cent of each remittance to Willson as his agreed fee.

Summarizing the facts as above set forth, the record shows that, of some $5,589.11 collected from Marsh & Company, said Fisher received about $2,026, or less than half thereof. The remainder was retained by defendant Gordon, in addition to the $100 paid him for costs, with the exception of the small sums remitted by Fisher to attorney Willson. Of said sum so retained by defendant, it is claimed that $24 went to attorney Verge and $1,739.11 to attorney Willson.

The remaining sum of about $1,800 defendant kept as his fee. Attorney Willson admitted receiving certain sums from defendant, but claimed that they were sent him in payment of his services for defendant in another case, and he so believed when he accepted the ten per cent fee sent him by Mr. Fisher. At any rate, it is plain that of the sum collected more than fifty per cent went into the hands of defendant, and that said Fisher received no part thereof. When Fisher called upon defendant in 1925, not having seen him since 1922, defendant claimed that their contract was on a fifty-fifty basis; that he was not a party to the ten per cent agreement between Fisher and said collection agency; that he had the right to retain one-half of the sum recovered. Such claim is the basis of his defense. Fisher testified, however, that this was the first time anyone had ever mentioned a fifty-fifty basis of collection to him, and that he had never discharged defendant as his attorney or rescinded said contract for a ten per cent collection fee.

Appellant's first claim is that the case was not tried on the theory presented by the People and that the confusion arising therefrom caused his conviction. In support thereof he relies upon certain testimony and a remark made during the course of the opening statement by the deputy district attorney to the effect that, at the time he gave Fisher the letter of introduction to attorney Willson, the relation between defendant and Fisher of attorney and client was thereby terminated; that, therefore, if he was not thereafter the attorney for Fisher, and if he was without authority as such attorney to make said collections, then the crime, if any, committed by him was larceny and not embezzlement, for embezzlement consists only of the fraudulent appropriation of property by a person to whom it has been entrusted (Pen. Code, sec. 503). In other words, appellant claims that the opening statement announced a theory of the trial, which would prove facts constituting larceny and not embezzlement, and his counsel accepted the issue, relying upon the technical differences between the two crimes, and was thereby led into consenting to the admission of much incriminating evidence which could otherwise have been prevented from reaching the jury.

This claim is untenable. The defendant was charged with the crime of embezzlement; the prosecution undertook to

present facts which would prove the commission of said crime by him, and the jury was guided by proper instructions in its consideration of the evidence. Whether or not said Fisher considered that defendant had ceased to act as his attorney is immaterial, and the opening remarks to the jury on this subject could not have prejudiced defendant. If defendant continued as Fisher's attorney, the crime, if any, was clearly embezzlement. There is ample evidence to support this view. There was never any substitution of attorneys in the action brought by defendant; in his letter to Verge and Willson, defendant spoke of their assisting him with the case; defendant signed the agreement on Fisher's behalf as his attorney, and likewise indorsed said checks as his attorney. Furthermore, Fisher testified that he never definitely discharged defendant as his attorney, although defendant had apparently ceased to be interested in the matter. On the other hand, even if Fisher did in fact discharge defendant in 1922, or if defendant in effect discharged himself, yet, in the later transactions, he acted as the constructive agent of Fisher in the handling of said property entrusted to him as such agent, in which event his crime, if any, was likewise embezzlement and not larceny. (See 10 Cal. Jur., p. 252, sec. 15; *People* v. *Treadwell,* 69 Cal. 226 [10 Pac. 502]; *People* v. *Steffner,* 67 Cal. App. 23, 28 [227 Pac. 699]; *People* v. *Main,* 75 Cal. App. 471 [242 Pac. 1078], and cases there cited.)

Defendant was a witness in his own behalf, and he contends that it was error for the court to admit the testimony of certain character witnesses who stated on behalf of the prosecution that his reputation for truth, honesty and veracity was bad, especially in view of the fact that these witnesses were residents of San Diego and not of Los Angeles, and had not known the reputation of defendant subsequent to the year 1923. Defendant, in taking the witness-stand, put in issue his character for truth, honesty and integrity, and thereby subjected himself as a witness to the same rules for testing his credibility by impeachment as any other witness. (*People* v. *Hickman,* 113 Cal. 80 [45 Pac. 175]; *People* v. *Arnold,* 116 Cal. 687 [48 Pac. 803]; *People* v. *Bannon,* 59 Cal. App. 50, 61 [209 Pac. 1029].) Furthermore, the knowledge of these witnesses, who knew of defendant's character up to within a few years prior to the

trial and during the time of his negotiations with said Fisher, was clearly not knowledge so remote as to make its admission an abuse of discretion by the court.

██ Defendant claims there is no showing of fraudulent intent on his part, as his actions were unconcealed and were based upon his understanding that he was to receive half of the sum collected. In our opinion, however, the evidence was amply sufficient to establish the fraud. Defendant's testimony at most raised a conflict, which was resolved by the verdict of the jury in favor of the People. The jury was properly instructed on the subject of the element of specific intent, and its determination of the matter is final.

We have carefully examined all points raised by appellant and find no merit in them. Judgment affirmed.

Curtis, J., Langdon, J., Waste, C. J., Richards, J., Shenk, J., and Seawell, J., concurred.